Kritzer v. Smith.

———— ·❦· ————

KRITZER, Defendant in Error, *vs.* SMITH, Plaintiff in Error.

1. It is no ground of demurrer to a petition in an attachment suit upon a note before maturity, that it states the note to be " due," or that it fails to refer to the law, or state the existence of the facts which authorize an attachment under such circumstances. It is sufficient that the *affidavit* sets forth facts which, under the statute, constitute a cause.

2. A defendant sued by attachment under the statute on a note not due, is not bound, it seems, to plead to the merits, until after the note is due.

3. A party's deposition, taken in a suit between different parties, may be read in evidence against him as an admission. But the rule is, that the whole deposition must be read; though a failure in this respect is no ground for

the reversal of a judgment, where it can be seen that the party has not been prejudiced.

4. Where an affidavit for an attachment, upon a note not due, sets forth two causes which warrant an attachment in such a case, and one which does not, and issue is only taken upon the two which do, a general verdict for the plaintiff will sustain the suit.

5. The issue being, whether a party was "about fraudulently to conceal or dispose of his property or effects so as to hinder or delay his creditors," an instruction that he must have done some *act* to indicate the intent, *was held* properly refused, an instruction being given in the words of the statute.

6. Upon a general judgment in an attachment suit, it is error to award a special execution against the property attached.

*Error to Jackson Circuit Court.*

Suit by attachment upon a note not due. After the usual averment setting forth the execution of the note, and describing it, the petition stated that the note was " due and unpaid." The affidavit set forth the 7th, 8th and 3d grounds of attachment, specified in the act (R. C. 1845.) The defendant and not the State was made the obligee in the bond given upon suing out the writ. The defendant, at the return term and before the note was due, filed a plea in abatement to the 7th and 8th grounds, but did not take issue on the 3d. At the trial, the plaintiff was permitted to read in evidence portions of a deposition of the defendant, taken in another suit pending against defendant and another, in which third parties were plaintiffs, to the reading of which defendant excepted. The jury returned a general verdict for the plaintiff. The defendant afterwards moved for an arrest of further proceedings, on the ground that the verdict did not warrant a further prosecution of the suit. The motion was overruled, and the cause continued. In the interval between the two terms, the note fell due. At the next term, and on the fourth day thereof, the defendant asked leave to file a demurrer to the plaintiff's petition, which was not granted, and final judgment was rendered for want of an answer for the amount of the note, with an award of a special execution against the property attached.

At the trial of the plea in abatement, the following instruction asked by defendant was refused:

" 3. Before the jury can find for plaintiff, they must believe that defendant, at the time the attachment was sued out, had conceived an idea or intention to hinder or delay his creditors in the collection of their debts, and that he had done some act to indicate a design to carry out such intention."

The court instructed the jury to find for defendant, unless at the time of the attachment, " he was about fraudulently to convey, assign, conceal or dispose of his property or effects so as to hinder or delay his creditors in the collection of their debts."

After a motion in arrest of judgment overruled, the defendant sued out this writ of error.

*J. B. Hovey*, for plaintiff in error. I. The court erred in permitting portions of defendant's deposition in another cause to be read in evidence. 1. The portions read were irrelevant to the issue in the cause in which the deposition was taken. 2. The rule as to sworn admissions at common law extended only to voluntary affidavits, bills and answers in chancery, examinations before commissioners in bankruptcy, oral testimony given in a regular cause before a *court*, and depositions *which have been used for the purpose of evidence*. ( *Collett* v. *Keith*, 4 Esp. Cases, 212.) 3. Since our practice act of 1849, the reason for allowing sworn admissions has altogether ceased, as either party may be sworn as a witness in the cause. (Art. 24, § 11.) II. The court erred in refusing the third instruction. The word " fraudulently" is a legal term which should have been defined to the jury. III. As one of the causes of attachment mentioned in the affidavit did not warrant a suit upon a note not due, and was not withdrawn, a general verdict for the plaintiff did not authorize him to further prosecute the suit, and so the motion in arrest after verdict upon the plea in abatement should have been sustained. IV. There was error in refusing leave to defendant to file his demurrer, as he was not bound to plead to the merits of the action until the next

Kritzer  *v.* Smith.

term after the note became due, and within the first six days thereof. This being a suit under a special statute, the act of 1849, as to the time of pleading to suits on notes, does not apply. V. The motion in arrest of judgment should have been sustained, because the petition was upon a note not due, and did not refer to any statute which authorized such a suit. VI. No sufficient bond was filed. (5 Mo. Rep. 18. 13 id. 25.)

*J. W. Reid,* for defendant in error. 1. Smith's deposition was properly allowed to be read in evidence as a sworn admission, nor does it matter that the portions read were immaterial to the issue in the cause in which it was taken. ( *Collett* v. *Keith,* 4 Esp. Cases, 212. 1 Starkie, 172. 1 Camp. 30. 4 Camp. 10. 1 Litt. (Ky.) 219–20.) Nor is it material that it had never been used on a trial, as that would not affect its value as an admission. The statute of 1849, allowing a party to call his adversary as a witness, is without prejudice to the right of proving his admissions. 2. The attachment act of 1847 is a general law—a mere supplement to the act of 1845—and of course need not be specially pleaded. 3. There is nothing in the practice act of 1849 or in the supplementary attachment law of 1847, which changes the time of pleading in suits upon notes not due. The judgment by default in this case was not rendered until the *fourth day* of the next term *after the note was due.* 4. The third instruction asked by defendant was properly refused. It involves the absurdity of a plaintiff taking steps to *prevent* a fraud which has been consummated. 5. The insertion in the affidavit of a cause which did not warrant an attachment under the circumstances, was mere surplusage, and no ground for arresting the judgment after verdict, no issue being taken upon it. The verdict was upon the issues taken. 6. If the bond was informal, it should have been taken advantage of by motion, and the plaintiff might have amended without prejudice. (Attachment act of 1845, art. 1, § 6.) The case is unlike *Stephenson et al.* v. *Robbins,* (5 Mo. Rep. 18.) There no bond was filed. But the bond in this case was sufficient. It afforded the plaintiff as substantial protection as if made to the state. (10 Mo. Rep. 665.)

SCOTT, Judge, delivered the opinion of the court.

As to the objection stated in the brief, that the bond for the attachment was not made payable to the state of Missouri, it may be answered that no point on the validity of the bond was made in the court below. In thus meeting the objection stated, we are not to be understood as expressing the opinion that the bond in this case would not have supported an action.

There was no error in refusing leave to the defendant below to file his demurrer, as we are of the opinion that it contained no cause affecting the plaintiff's action.

1. On the face of the petition, it appeared that the time for the payment of the note on which the suit was brought, had not arrived; and the word " due," used in the petition, must be construed to mean as it does in the saying *debitum in presenti solvendum in futuro*. The law authorized proceedings by attachment against debtors in certain circumstances, when the debt was not payable till a time posterior to the bringing of the suit. With this law in the mind, the proceedings would have been entirely intelligible. It was no more necessary to refer to that than to any other general statute.

2. If it had appeared that the defendant had any defence to the action of the plaintiff, the court, under the circumstances, should have lent an indulgent ear to it; but as it does not appear from any thing in the record that there was any real defence to the merits of the action, we cannot perceive any ground on which we would be warranted in reversing the judgment. The defendant, we conceive, was not bound to plead to the action until after the note on which the suit was brought became due.

3. In whatever light it may be viewed, we cannot see any ground on which the objection to the deposition of the defendant, Smith, given in another action, can be upheld. We take it for granted that the handwriting of Smith, the defendant, whose name is subscribed to the deposition, was proved or admitted, inasmuch as the bill of exceptions states that " the identity of the defendant with the deposition is not disputed."

Kritzer v. Smith.

His name being subscribed to the deposition, on no ground could it be refused as an admission. It was evidence, just as a letter or voluntary affidavit would have been. There is nothing in the practice act of 1849 which can affect this question. That a party can be sworn as a witness in a cause, can be no reason why his admissions may not be read against him. It was a rule of the common law that what a witness swore on a trial between others, subjecting him to an action or the payment of a debt, might be given in evidence against him in a suit in which he was a party. He was not exempt from giving such testimony. He was at liberty afterwards to explain his evidence. This we conceive to be the common law on this subject, confirmed by an act of parliament, made in accordance with the views of a majority of the English judges. We have a similar statute. Irrelevant questions, put with a view to extract evidence from the witness against himself, would be discountenanced, and all courts would protect a witness in his refusal to answer them. Questions improperly put, yet if answered, the answer will be evidence against the witness. This matter is so plain that it cannot be necessary to say more upon it.

As the deposition was read as an admission, regularly, the party reading it should have read the whole. The distinction is that, when an answer is read as a part of the pleadings in the cause in which it is filed, only such parts may be read as the party desires ; but when it is taken from the cause in which it is filed and read in another proceeding, as an admission, there the whole of it must be read by the party offering it. The course pursued on the trial was not regular, but as it does not appear that there were any other parts of the deposition read which varied the sense of those parts which were read, we cannot reverse the judgment for that cause. The deposition read on the trial is in the record, and we do not see that the party was injuriously affected by the omission to read the whole of it. (3 Greenl. 1 Starkie, 290, 1, 2, 3.)

4. As there were issues taken on but two of the causes alleged for suing out the attachment, there being a general ver-

20—XXI.

dict for the plaintiff, does not create any error, as either of the causes on which issue was taken was sufficient to support the attachment. The omission to take issue on the third ground stated in the affidavit for the attachment, was no admission of its truth ; and if it amounted in fact to such an admission, the plaintiff is not affected thereby, although it may be that this ground of itself would not sustain an attachment under the circumstances.

5. There is no warrant in the statute for the idea contained in the third instruction asked by the defendant ; it was therefore properly refused. The instructions given clearly set forth the law applicable to the case.

6. The judgment in this cause was a general one. The 59th section of the 1st article of the law concerning attachments enacts that, " where there is a general judgment against the defendant, the execution shall be a common *fieri facias*, which may be levied upon all the property of the defendant subject to execution, whether attached in the cause or not." The judgment and award of execution, therefore, in this case is erroneous, inasmuch as the court undertook to specify what property should be sold. The judgment being a general one, as required by the pleadings, the court had no authority to condemn the attached lot to be sold, as under such a judgment the attached property need not necessarily be sold. If there is other property sufficient to satisfy the execution, the defendant may surrender it and have the attached property reserved, if he wills it. This is a right the execution law gives him, and which the court had no power to take away.

The judgment will be reversed, and a general judgment will be entered here, such as the law requires, and the defendant in error will pay the costs. The other judges concur.