SENSENDERFER, *Appellant* v. SMITH *et al*

1.   **Evidence, Parol**: RECORDS. Parol evidence, in order to over-
come record evidence, should be of the most unquestionable and
conclusive character.

2.   **Purchase with Notice**: TRUSTEE: ESTOPPEL. Defendants' gran-
tor entered a tract of government land, and took from the receiver
of the local land office a receipt for the purchase money, describing
the land. By a mistake of the officer the records of the General
Land Office at Washington were made to show an entry of a differ-
ent tract, and a patent was issued accordingly. The records of the
local office were afterwards destroyed by fire. Without taking ac-
tual possession defendants' grantor claimed to be the owner of the
tract designated in the receipt. Nevertheless, for a period of sev-
enteen years he permitted the other tract to be assessed to him for
taxation, and during a part of the time at least, paid the taxes on
it. The tract described in the receipt never was assessed to him.
Plaintiff knew that defendants' grantor had intended to enter that
tract, and that he claimed title to it. Finding, however, that the
government records showed it to be vacant and subject to entry,
plaintiff purchased and obtained a patent for it in his own name.
Neither the defendants nor their grantor ever took any step to have
the mistake corrected until after the issue of the patent to plaintiff;
*Held.* 1st, That these facts were not sufficient to put plaintiff on in-
quiry, or to affect him with notice of a title in defendants, or to con-
stitute him a trustee for them ; 2d, That defendants had acquiesced
in the entry as made, and were estopped to claim title to the other
tract.

NAPTON AND NORTON, J J., DISSENTING.

*Held,* that the question which tract defendants' grantor had in
fact entered, was a judicial question : that the decision of the land
officers of the government and the issuing to him of the patent for
the other tract was not conclusive on him or his grantees, and that
plaintiff took the title as trustee for them.

*Appeal from Johnson Circuit Court.*—HON. FOSTER P. WRIGHT,
Judge.

*H. B. Johnson and Snoddy & Short* for appellant, cited
U. S. Rev. Stat., §§ 2469, 2470, 2355 ; Wag. Stat. 592, § 15 ;
1 Green. Ev., § 558 ; Bull. N. P. 254 ; *Rex v. Castleton*, 6
T. R. 236 ; *Doe v. Pulman*, 3 Ad. & El. (N. S.) 622 ; *Allison*

*v. Furnival*, 1 C. M. & R. 292; 1 Phil. Ev. (5 Am. Ed.) 485; U. S. Rev. Stat., §§ 2369 to 2372; *Johnson v. Towsley*, 13 Wall. 72; *Allison v. Hunter*, 9 Mo. 749; *Bodley v. Taylor*, 5 Cranch 191; *Brush v. Ware*, 15 Pet. 93; 1 Sto. Eq. Jur., §§ 146, 147 and note; 1 Phil. Ev., pp. 567 to 585, 592; Lester's Land Laws, Vol. 1, pp. 311, 322, 325, 327; *Harper v. Scott*, 12 Geo. 125; *Griffith v. Deerfelt*, 17 Mo. 31; *Bagnell v. Broderick*, 13 Pet. 436; *Wilcox v. Jackson*, Ib. 498; *Leblanc v. Ludrique*, 14 La. An. 772; *Sweatt v. Corcoran*, 37 Miss. 513; *Bledsoe v. Little*, 4 How. (Miss.) 13; *Carter v. Spencer*, Id. 42; *Harris v. McKissack*, 34 Miss. 464; *Maxey v. O'Conner*, 23 Tex. 241; *Dickinson v. Brown*, 9 Sm. & M. 130; *Boggs v. Merced Co.*, 14 Cal. 279; *Leese v. Clark*, 18 Cal. 535; *Waterman v. Smith*, 13 Cal. 373; *Lebeau v. Armitage*, 47 Mo. 138; *Enfield v. Day*, 11 N. H. 520; *Enfield v. Permit*, 8 N. H. 512; *Bellows v. Copp*, 20 N. H. 492; *McCaughal v. Ryan*, 27 Barb. 376; *Doe v. Craft*, 1 Kerr N. B. 546; *Robinson v. Leake*, 14 Iowa 421; *Barry v. Gamble*, 8 Mo. 88; *Stringer v. Young*, 3 Pet. 320; *Boardman v. Reed*, 6 Pet. 328; *Minter v. Crommelin*, 18 How. 87; *Steiner v. Coxe*, 4 Pa. St. 13; *Hill v. Miller*, 36 Mo. 182; *Willot v. Sanford*, 19 How. 79; *Cavender v. Smith*, 8 Iowa 360.

*Crittenden & Cockrell and J. J. Cockrell* for respondents, cited Lester's Land Laws, p. 47; 1st Story's Eq., Sec. 165; *Rhodes v. Outcalt*, 48 Mo. 367; *Wickersham v. Woodbeck*, 57 Mo. 61; *Aldrich v. Aldrich*, 37 Ills. 32; *Brill v. Stiles*, 35 Ills. 305; *Goolsbee v. Fordham*, 49 Ala. 202; *Ventress v. Smith*, 10 Pet. 161; *Warren v. Van Brunt*, 19 Wall. 646; *Trulock v. Taylor*, 26 Ark. 54; *Carroll v. Safford*, 3 How. 461; *Witherspoon v. Duncan*, 4 Wall. 218; *Stark v. Starrs*, 6 Wall. 408; *Hedrick v. Hughes*, 15 Wall. 123.

HENRY, J.—This is a suit in ejectment by plaintiff, to recover the nw qr. of the se qr. of Sec. No. 35, in township 48 and range 24 in Johnson county.

The defendants make an equitable defense, stating in

their answer, that, on the 19th of July, 1854, one B. F. Dunkley, under whom they claim, entered the land in question at the United States Land office, at Clinton, Missouri, paid the purchase price, and received from the receiver of the land office, a receipt for fifty dollars, the amount of the purchase money, in which it was stated that it was the consideration money for the land in question, and that he, thereupon, immediately took possession of said land, and continued in possession thereof, until he conveyed it to defendants, who have been in possession ever since the conveyance to them. They further allege, that when Dunkley entered said land, the register of the land office at Clinton made due entry of such fact upon the records of said office, and thereafter evidence of such entry was kept at the land office at Boonville, Missouri, and in the office of the recorder of deeds, and county clerk's office for Johnson county; that after said entry by Dunkley, the building in which the land office was kept at Warsaw, Missouri, to which place the office had been removed from Clinton, was consumed by fire, together with all the records, plats and plat-books of the government pertaining to the land office in said land district, and that afterwards, either by mistake or otherwise, the records manufactured for and supplied to said land office, after the fire at Warsaw, erroneously " exhibited, that the tract of land in controversy, was vacant and unentered," and that said Dunkley had entered other and different parcels in said section, but not the nw qr. of the se qr.; that said Dunkley and defendants were ignorant of such false entries, until informed by plaintiff that he had entered said land. They charge that plaintiff, when he entered said land, knew that defendants were living on and cultivating the same, and that Dunkley had entered the land. Plaintiff, in his replication, denied the allegations in defendant's answer. The court, after hearing the evidence, found for defendant and rendered a judgment accordingly, from which plaintiff has appealed.

The main questions to be considered are:

1st. Did Dunkley enter the land in controversy in July, 1854?

2d. If he did, had plaintiff notice of that fact, or of such facts, as in equity are equivalent to notice of that principal fact?

The evidence relied upon by defendants to establish the entry of the land by Dunkley in 1854, is oral, and must be of sufficient weight to overcome the record evidence to the contrary, furnished by the plat-book of the land office at Warsaw, the record of the land department at Washington and the patent of the United States issued to plaintiff, before a court of equity would be warranted in holding plaintiff as a trustee for Dunkley or his grantees. It appears, from the evidence, that the office was taken from Clinton to Warsaw, where the records of the land office for that district were consumed by fire, but when the office was afterwards moved to Boonville, these records were supplied from the general land office at Washington, which showed the land in question to be vacant.

The records of entries of land in the several land districts are made at the general land office, from monthly and quarterly reports of the registers and receivers, and from duplicate receipts for land entered, forwarded by the land district officers to the general land office. The register and receiver of the land office at Clinton certified to the general land office the entries made in July, 1854, and the tract in question was not embraced in that monthly report, or in any monthly or quarterly report made from July, 1854, to September, 1871, when the patent for the land was issued to plaintiff. We have said that the records of the land office at Clinton furnished evidence that the land in question had not been entered. It is true, that Faulk, a witness for defendants, testifies that he saw the register at the land office, when he entered the land for Dunkley, write the name of B. F. Dunkley on the plat-book, on the space which indicated the tract in question, and that Keen, another witness for defendants states, that

in the latter part of September, 1854, he went in person to the land office at Clinton, and entered eight forty acre tracts in section 35, and then saw on the plat-book of said land office, the tract in controversy, marked as " entered."

On that plat, the ne qr. of the se qr., of section 35, was marked as entered by Dunkley. In November, 1854, a patent was issued to Dunkley for the ne qr. of the se qr. Dunkley testified that he never entered that forty. The plat-book at Boonville also showed that forty entered by Dunkley. If he did not enter that, instead of the nw qr. of the se qr., and it be true, as Keen and Faulk stated, that the plat-book showed the latter as entered by Dunkley, how did it happen that both the ne qr. and the nw qr. were marked on the plat-book as entered by Dunkley? And how did the alteration on the plat-book afterwards occur, showing the nw qr. of the ne qr. vacant? No conceivable motive for making such an alteration can be ascribed to the officers of the land office, for neither of them, nor any one connected with them, profited by the alteration, and the land for years after, appeared vacant on the plat-book. These witnesses are testifying from memory, to facts contradictory of record evidence, and their testimony to overcome it, should be of the most unquestionable and conclusive character. Mr. Keen says that he knew that Dunkley desired to enter this tract of land. He knew that his brother-in-law, Faulk, went to Clinton to enter it for Dunkley. He knew that Faulk was very familiar with the land in that section, and the boundaries and corners of its subdivisions, and that when Faulk returned, Faulk showed him the duplicate receipt, which he read and remembers, that it showed the entry of this identical forty. He says it also showed that it had been entered for Dr. Dunkley by Faulk.

The duplicate receipt for the purchase money for the ne qr. of the ne qr. forwarded to the General Land Office from the Clinton office, read in evidence by plaintiff, does not show that Faulk had any connection whatever with

the entry ; and it will be borne in mind that defendants' theory is that the tract was embraced in the duplicate sent to Washington instead of the tract in controversy. When Keen testifies, after the lapse of twenty-three years, to the contents of that duplicate shown him by Faulk, it is charity to suppose that he has mistaken the impression made upon his mind, by his knowledge, that Dunkley wanted to enter that tract, and that Faulk went to enter it for him, for a recollection that the duplicate described the land in controversy. Faulk's testimony, that he saw the register mark this tract on the plat, as entered, is contradicted by the record. That he saw him mark a tract as entered on that occasion, we have no doubt, but in the light of other facts, which are indisputable, we are satisfied that it was the ne qr. of the ne qr. that was so marked, and that the witness is mistaken. The register did not then mark two tracts as entered, and in about two months from the date of that entry the patent for the ne qr. of the ne qr. was issued to Dunkley. Dunkley testifies that his receipt is lost or mislaid, but is positive that it described the tract in controversy. He, too, testifies from memory, as to the contents of that receipt.

The clerk of the county court of Johnson county testifies that the land in question was assessed to Dr. Dunkley from 1867 to 1874, inclusive, and never before 1867, and that the ne qr. of the nw qr. was assessed to him from 1856, two years after his entry, to 1874, a period of eighteen years, and that he paid the taxes thereon for 1873 and '74. It does not appear whether he had paid taxes before 1873. How did it occur that the ne qr. of the nw qr. was assessed to Dunkley as early as 1856, and down to 1874 ? Either Dunkley gave it in to the assessor as his land, or the assessor ascertained from the records in Johnson county, that Dunkley owned it. In 1866 a certificate was procured from the land office at Boonville, and kept afterward in the recorder's office of Johnson county, showing that Dunkley entered the nw qr. of the se qr. July 19th, 1854,

and for the first time in the following year, it was assessed to Dr. Dunkley. That this certificate so procured from the Boonville land office was untrue, is shown by certified copies of the Boonville plat-book, and the records of the general land office at Washington. From the fact that the ne qr. of the se qr. was assessed to Dunkley in Johnson county, where he resided from 1856 to 1874, and that the nw qr. of the se qr. was not assessed to him, it is a fair inference, either that prior to 1866 there was in the recorder's office of Johnson county a certified copy of the plat-book of the land office, showing that Dunkley owned that land, and not showing that he owned the land in controversy, or that he included the former tract in the list of lands owned by him, given by him to the assessor.

To sustain the issue for defendants, on this branch of the case, we are to find that at least three mistakes and one crime were committed by the register or receiver of the land office at Clinton and Warsaw.

1st. A mistake in the duplicate retained at the office, of the receipt given to Dunkley for the land he entered, in the description of the land sold to Dunkley.

2d. That mistake having been carried to the plat-book, was afterward corrected by marking as entered, the tract in question, and the register, by mistake, failed to erase the remark "entered" on the ne qr. of the sw qr., and permitted it to remain marked as "entered."

3d. In reporting the lands entered in July, 1854, to the general land office, a mistake was again made as to the tract entered by Dunkley, and the ne qr. of the sw qr. reported as entered by him; and the crime committed was in subsequently allowing the plat-book to make it show the nw qr. of the sw qr. vacant.

On the other hand, that Faulk made a mistake and applied to, and did enter the ne qr. instead of the nw qr. of section 35, solves the whole difficulty, and is established, we think, by a preponderance of evidence. From the facts thus stated, what is the conclusion? Clearly, that while

Dunkley may have desired to enter the tract in question, and Faulk may have intended to enter it for him, he made a mistake at the land office, and applied for, and entered the ne qr. of the nw qr. instead. If this be a correct conclusion from the evidence, it settles the controversy in favor of the plaintiff.

But suppose it be true that Faulk, for Dunkley, did enter this very tract, and the officers and agents of the government gave him a receipt for the purchase money for the identical tract, but made a mistake in the duplicate retained by them, and described another tract, and carried that mistake into the plat-book, is there sufficient evidence in this record to charge plaintiff with notice of these facts?

It is alleged in the answer of defendant that Dunkley, immediately after his entry of this land in 1854, took possession of it. The evidence shows conclusively that he did not take actual possession until 1871. He testifies that it was not inclosed until 1871; that the first crop raised upon it was in 1873. He had no actual possession until 1871, and no constructive possession prior to 1871, for the title remained in the government of the United States. If he had been in actual possession, claiming title, a very different question would have been presented on this branch of the case from that we have to deal with. Plaintiff might then have been put upon his inquiry, and affected with notice of Dunkley's equity against the government. But what are the facts relied upon as constituting notice to plaintiff? That he knew that Dunkley claimed the land, and that in a conversation with Faulk, after plaintiff had received his patent for the land from the government, he remarked to Faulk, who was proceeding to give him an account of the entry made by him for Dunkley in 1854, that he knew that Dunkley intended to enter this tract, but made a mistake and entered the other forty. Now, what knowledge did that remark imply? That Dunkley had entered the nw qr. of the se qr.? and that is the knowl-

edge he must have had to hold him as a trustee. On the contrary, it implies that he knew that Dunkley, instead of entering that, had entered the other tract. Did the knowledge of the fact that Dunkley claimed the land, impose upon the plaintiff, before he could acquire a title from the government, the duty of going to Dunkley to ascertain what title he had, and affect him with notice of any equity he may have had against the government? Take the facts as they are clearly proven. The records of the land offices of the government, both at Boonville and Washington, showed this land to be vacant. A purchaser goes to the office at Boonville, knowing that an individual, not in possession of the land, claims to own it, and then finds that it is vacant and subject to entry. What could he have learned from Dunkley, if he had gone to him, and Dunkley had told him the whole truth? Certain facts resting in his memory, contradicting the records of the general and local land offices, and he not in possession of the land he claims to have owned since 1854, but claiming the very land which he says was reported by mistake or fraud, as the land he entered; for permitting it to be assessed to him annually for seventeen years, amounted to asserting ownership; and this, it is insisted, makes the patentee a purchaser at his peril, and a trustee for the plaintiff.

It is evident that if Dunkley intended to enter, and Faulk for him did enter the nw qr. of the se qr., and by mistake it was not so entered upon the plat-book, or reported to the general land office, yet the ne qr. of the nw qr. was certainly with his knowledge, assessed to him from 1856 to 1874, and for seventeen years he must have been apprised of the fact: that this mistake had been made, and not until plaintiff had entered the land did he make complaint, or take any steps to have it corrected. His own testimony shows that he knew that he had not purchased the ne qr., but had purchased the nw qr. The ne qr. was assessed to him for thirteen years, and for no year in that period had the nw qr. been assessed to him. Is he not to

be taken to have acquiesced? Shall he, for seventeen years hold the ne qr; have it assessed to him, pay taxes on it for 1873 and 1874, and then claim that there was a mistake, and, in a court of equity, have the purchaser from the government of the tract he intended to enter, divested of his title, on the evidence preserved in this record? We think not, and the judgment is reversed and the cause remanded. Judges SHERWOOD and HOUGH concur.

REVERSED.

NAPTON, J., DISSENTING.—This was an action of ejectment for the nw qr. of the se qr., of Sec. 35, T. 48, R. 24. The suit was brought in the circuit court of Johnson county in 1873—it was tried in 1875. The plaintiff's title was a patent for the land issued on the 15th of September, 1871. The defense was, that one Dunkley, the father of Mrs. Smith, &c., the nominal defendants, bought of the United States, at the Clinton land office, this same piece, on July 19th, 1854. The defendants, therefore, asked the court that the legal title acquired by the plaintiff in 1871 be divested out of him and vested in the defendants.

After hearing all the testimony in the case, the circuit court made a decree in conformity to the prayer of the defendants, and from this decree the plaintiff appeals to this court. The testimony in this case is voluminous and presents a state of facts not easily accounted for, and has, therefore, from the importance of the principle involved, and the unusual and singular discrepancies occurring in the records of the United State Land Offices at Clinton, and Warsaw and Boonville, and of the general land office at Washington, been examined with care, although the result reached is not one in which all the court is agreed.

It is hardly necessary for me to repeat the testimony offered by the defendant to establish the fact that, on the 19th of July, 1854, he entered at the land office at Clinton the nw qr. of the se qr., S. 35, T. 48, R. 24, and received a certificate from the United States officers to that effect. If

any reliance is to be placed on human testimony, that fact is established beyond doubt. Dr. Dunkley sent the money by Capt. Faulk to enter the piece of land, and Faulk swears he entered it and received the receiver's receipt, and Mr. Keen, who was in Clinton shortly afterward, testifies that he saw this 40 marked entered on the plats in the office. Dr. Dunkley testifies that he received the certificate for the piece of land now in controversy. All these witnesses were perfectly familiar with the land in question, and knew the boundaries of all the land in the section, and the quarter now in dispute was in the center of Dr. Dunkley's land. I am satisfied that in 1854 Dunkley entered and paid for this piece of land and received a certificate of the officers at Clinton to that effect.

The question, however, upon which I have had doubts is, whether the plaintiff, who obtained a patent for the land in 1871, was so far affected with notice, or so far put on inquiry, as to authorize the court to hold him responsible for mistakes made by the United States officers. He admits in the conversation reported by Faulk, to whom he applied after his purchase to act as agent for him, that "Dunkley intended to enter it, but made a mistake and entered the 40 east of it." The plaintiff proceeded to give Faulk a history of the way he had become acquainted with the vacancy, that he had been for two years a clerk in the land office at Boonville, and in that way became acquainted with the error, or the fact that Dunkley had not entered it. He then stated that he prosecuted the examination to Washington, and spoke of an assistant he had there, and became satisfied that the land was vacant. In other words, his examination of the records at Boonville and Washington satisfied him that Dunkley was mistaken in supposing he had entered the sw qr. of the se qr., of Sec. 35, that the officers in the land office were not mistaken, but that Dunkley was, and that he had really entered the ne qr. of the sw qr., of Sec. 35. He therefore concluded to follow the decisions of the government officials at Washington,

but subject of course to any judicial investigation, which might determine that the government officials were wrong and that Dunkley was not mistaken.

The plaintiff purchased with a full knowledge of Dunkley's claim but relying on the records at Washington that such claim would not be available. And if the records at Washington are conclusive and cannot be contradicted by parol evidence, however satisfactory, the plaintiff was not mistaken. It is the necessary result of the conclusion that I have reached, that Dunkley did enter the nw qr. of the se qr., of Sec. 35, in July, 1854, that the officers at Clinton must have erroneously reported to Washington, that Dunkley entered the ne qr. of the se qr. of Sec. 35. In other words, the duplicate sent to Washington was erroneously reported as an entry of the ne qr. of the se qr., and therefore a patent was issued Dunkley in the fall of 1854 for the ne qr. of the se qr., of Sec. 35. But in September, 1854, the records at Clinton showed that the nw qr. of the se qr., of Sec. 35, was entered, and that the ne qr. of the se qr. was vacant, and therefore Mr. Keen was allowed to enter and did enter the ne qr of the se qr., of Sec 35. The plats at Washington showed that the ne qr. of the se qr., of Sec. 35, was entered by Dunkley in July and by Keen in September; that there was a mistake in these plats was obvious. The officers of the government, however, concluded to issue a patent to Dunkley, whose entry was prior in date to Keen's so far as these records showed.

They knew that the United States could not sell the same piece of land twice, and that there was a mistake in the record of the first or second entry. Their conclusion, however material, that the first buyer was entitled to a patent, depended upon a question of fact which they had no authority to determine. As it appears now from evidence entirely satisfactory to me, Dunkley had not entered in July the ne qr. of se qr. of 35, but had entered the nw qr. The plaintiff bought on the assumption that the

United States officers were right and that Dunkley was wrong. The question as to who was right and who was wrong was one for judicial determination, and the plaintiff made his purchase in view of this, and upon a conclusion he had reached that Dunkley was mistaken, and that the plaintiff could safely rely on the records at Boonville and Washington. Upon the assumption that the officers were mistaken, and that Dunkley was right, the plaintiff could, of course, acquire no title in 1871.

It appears that the land office at Clinton was removed to Warsaw, and that after its removal the office and all its records were destroyed by fire in 1861. This fact would not be material if the officers at Clinton correctly reported, as by law they were required to do monthly, the entries at Clinton. But the testimony shows beyond all doubt that on July 19th, 1854, Dunkley entered the nw qr. of the se qr. of sec. 35, and of course, that the duplicate sent to Washington that he had entered the ne qr. of the se qr., of Sec. 35, was a mistake. The plaintiff, when he purchased in 1871, was apprised that the vacancy in the nw qr. of the se qr. of sec. 35, as it appeared on the books, was a matter in dispute, as the two entries of the ne qr. in July and September clearly indicated. He thought proper to rely on the duplicates sent to Washington. It turns out upon investigation that they must have been false.

My opinion is, therefore, that the judgment of the circuit court was right, and in this opinion Judge NORTON concurs.