WIDDICOMBE, *Plaintiff in Error*, v. CHILDERS *et al.*\*

1.  **Land Title**: STATUTE OF LIMITATIONS. The statute of limitations does not begin to run as to government land until the legal title has passed from the United States. *Chouteau v. Gibson*, 50 Mo. 85.

2.  **Equitable Title**: EQUITABLE DEFENCE: AFFIRMATIVE RELIEF. Where one intended to and did locate certain government land, and its entry and sale by its proper description was entered by the register on the books of the local land office, he will be held to have the equitable title, although in his application for the land it was by mistake misdescribed, and in an action of ejectment against those claiming under such equitable owner, by one who had there-after obtained a patent for the land, affirmative equitable relief will be granted the defendants, and the holder of the patent will be compelled to convey the legal title to them by deeds of general warranty.

3.  **Equity**: NOTICE. One taking such legal title with knowledge of facts and circumstances sufficient to put him on inquiry as to the equitable title, takes with notice of the latter, and will be deemed in equity to hold such legal title in trust for the equitable owner.

*Error to Marion Circuit Court.*—HON. JOHN T. REDD, Judge.

REVERSED.

*Draffen & Williams* for plaintiff in error.

I.  The patent from the United States, dated December 15, 1871, vested in the plaintiff the legal title to the land sued for. *Griffith v. Deerfelt*, 17 Mo. 31. (1) Some effort, it seems from the record, was made in the court below to impeach this patent on the ground that the rules of the department required lands improperly withheld from private entry, when restored to market, to be advertised for thirty days and the entry thereof opened to competitive bidding. It only applied where land had, in fact,

---

(\*) Decided at October term, 1883, but not certified to reporter for publication with cases of that term.    REPORTER.

been disposed of and afterwards the entry cancelled. The southeast quarter was never entered until applied for by the plaintiff. It was subject to entry the same as any other vacant land. It was simply an unentered tract of land, the title to which, up to the time of the issue of plaintiff's patent, had always been in the United States. If the rule was applicable to this land, it was to all lands of the government. (2) But, in addition, it could not be shown, to impeach this patent, that in any of the preliminary stages of the title the subordinate officers of the government had not complied with the law, even if it were the case. See *Sarpy v. Papin,* 7 Mo. 503 ; *Allison v. Hunter,* 9 Mo. 749 ; *Barry v. Gamble,* 8 Mo. 88 ; *Hunter v. Hemphill,* 6 Mo. 106. "Nor can it be gainsaid that when a patent has been issued for lands subject to sale, all inquiry into the fact whether the land conveyed by it has been *regularly proclaimed for sale* is precluded in any collateral action." *Allison v. Hunter,* 9 Mo. 758. The United States alone can take advantage of this. Cases *supra.* (3) Again, the *answer* sets up the fact that the legal title to the land is in the plaintiff, and seeks to divest him of it and vest it in the defendants, and it is a familiar principle that a party cannot contradict his pleadings. II. In order to divest plaintiff of his legal title the clearest evidence is required : (1) That the defendants, or those under whom they claim, applied for and entered the land in controversy, and (2) that the plaintiff had notice thereof at the time of his entry. III. The argument that Edward Jenner Smith must have intended to enter the land in dispute, because Robert Wooden had previously entered the tract applied for by Smith, cannot stand. Double entries of the same tract were matters of common occurrence. The records show large numbers of them, and congress recognized the fact by passing an act providing for relief in such cases. Revised Statutes of the United States, section 2369. The application of Edward Jenner Smith being for the

southwest quarter, he acquired no equitable right to the southeast quarter, even if he had intended to enter the latter and made a mistake in the numbers. He could only change his entry by complying with section 2372, United States Revised Statutes (Act of May, 1824), and this application to change his entry was required by the act to be made before the sale of the land, intended to be entered, to a third party. *Carman v. Johnson*, 29 Mo. 84. IV. The plaintiff, at the time of his entry, had no notice of the pretended equitable claim of the defendants. He examined the records of the land office, and there was nothing whatever to indicate a prior entry of the land. If it be contended that the erasures on the tract and plat book put him upon inquiry (which could hardly be the case, as there are numbers and numbers of such corrections and alterations), then certainly he could only go to the original application of Smith, the duplicate issued to him, and the record of the patent he received, to see what land Smith entered, and all of these showed that the land sued for had *not* been entered by Smith. See *Sensenderfer v. Smith*, 66 Mo. 80; *Sensenderfer v. Neale*, 66 Mo. 669; *Widdicombe v. Mercer*, 72 Mo. 588. The land in this case was never actually occupied until after plaintiff's entry, and the parties now claiming it did not purchase until two years after plaintiff's patent was recorded in Clark county. V. The statute of limitations did not begin to run until after the legal title emanated from the government, which was December 15, 1871, and this suit was commenced August 25, 1874. See *McIlhaney v. Ficke*, 61 Mo. 329; *Smith v. Madison*, 67 Mo. 694; *Gibson v. Chouteau*, 50 Mo. 85. The land in this case was vacant. There was no application to enter it ever made by Smith, under whom the defendants claim, and nothing on the records of the land office to indicate in any manner that he had any right in or to it.

*James Hagerman* for defendants in error.

The plaintiff relies on the legal title and the defendants on a prior equitable title. Although the legal title is in the plaintiff, yet he holds the same in trust for the equitable owners. "A man who acquires, even for a valuable consideration, a legal title with the knowledge that it is affected by an equity, takes it subject to that equity." Story's Equity, section 395; Bispham's Principles of Equity, section 262. There is nothing conclusive in the patent as to the equitable rights to the land. "After the title has passed from the government to individuals and the question has become one of private rights, the jurisdiction of equity may be invoked to ascertain if the patentee does not hold in trust for other parties." *Johnson v. Towsley*, 13 Wallace 72. See also to same effect *Minnesota v. Batchelder*, 1 Wallace 109; *Silver v. Ladd*, 7 Wallace 219; *Stark v. Starr*, 6 Wallace 402; *Carman v. Johnson*, 29 Mo. 84; same case, 20 Mo. 108. This doctrine is recognized fully in the very cases cited in the plaintiff's brief. The plaintiff, when he acquired the legal title, either knew absolutely of the equitable title, or he knew such facts as to put him on inquiry. "Actual notice consists in direct information of a fact brought directly home to a party, or a knowledge of such circumstances which would lead him to a knowledge of such facts." Bispham's Equity, section 268; Story's Equity, 395, *et seq.*

RAY, J.—This is an action of ejectment for the southeast quarter of section thirty-six, township sixty-four, range six, west, and was originally against Oliver P. Childers. It was instituted in the circuit court of Clark county on the twenty-fifth day of August, 1874. The petition is in the usual form; the answer of the defendant, Childers, was a general denial. The cause was

sent by change of venue to the Marion circuit court. On the third day of March, 1876, Lucretia Jungher, Sallie F. Johnston, and H. Will. Johnston, were, upon their own motion, and against the plaintiff's objection, made parties defendant, and on the sixth day of March, 1877, filed their second separate amended answer, upon which the cause was tried.

This answer denied that the defendant, Childers, was in possession of any portion of the land sued for except $14\frac{82}{100}$ acres, being that part of the tract west of Fox Slough, enclosed by a fence. The answer then set up the statute of limitations, and for an equitable defence, alleged that the defendant, Lucretia Jungher, was the widow, and Sallie F. Johnston, the only heir at law, of Theodore Jungher, and that H. Will. Johnston was the husband of said Sallie F. Johnston. That, in 1836, Edward Jenner Smith intended to enter, and applied to enter, and did enter, the land sued for, but that the application was, by mistake of the register who filled the same, made for the southwest quarter instead of the southeast quarter. That the southwest quarter had been previously sold to one Robert D. Wooden, and was mistakenly inserted by said register, in the application signed by said Smith, instead of the southeast quarter, which was the tract actually entered and intended to be applied for and entered by said E. Jenner Smith. That the correct land was by the register noted upon the tract-book and plat-book, which had since been wrongfully and fraudulently changed. That the said E. Jenner Smith took possession of, and on the sixth of November, 1837, sold, the southeast quarter to John D. Smith. That the executors of John D. Smith sold the same in 1838 to Mary C. Buck, who, with her husband, sold to Theodore Jungher in 1857. That Jungher died, leaving defendant, Lucretia Jungher, his widow, and Sallie F. Johnston, wife of H. Will. Johnston, his only heir. That in 1870 these parties sold by warranty deed,

thirty-five acres of said southeast quarter to E. P. Bull and John Fallon. That January 1st, 1873, they sold, by like warranty deed, the balance of one hundred and twenty-five acres to John W. and Samuel McKee. That all of said conveyances were upon record in the office of the recorder of Clark county. That the said McKees, in 1874, verbally leased $14\frac{82}{100}$ acres in the south part of the southeast quarter, west of Fox Slough, to defendant, O. P. Childers, who was in possession of that portion of said land only. That the parties aforesaid claiming under said E. Jenner Smith, have been in possession of the said southeast quarter under their respective deeds continuously since the entry of said land. That the plaintiff, with full notice of the facts and of the equities of said defendants, and their grantors and grantees, and with knowledge of the said mistake and error in fraud of their rights, entered said southeast quarter and procured a patent to be issued to himself therefor, and asked that he be declared to be a trustee for the defendants, or those claiming under them, and the legal title be divested out of him, and vested in these defendants, or those claiming under them, by deed of general warranty as aforesaid.

On the eighth day of November, 1877, plaintiff filed his replication, denying specifically each allegation of the said answer, and expressly and positively denying all allegations of notice to him, or fraud upon his part, in entering said land.

The case was tried before the court without a jury, on the sixteenth of November, 1877. The court found the issues for the defendants, and entered a final judgment against the plaintiff, but refused to decree the title in defendants, as prayed by them.

This finding and judgment of the court, *in extenso*, is as follows, to-wit: "The court doth find the following facts: That on the eighth day of November, 1834, one Robert Wooden entered at the land office at Pal-

myra, the west one-half ($\frac{1}{2}$) of section thirty-six (36), township sixty-four (64), range six (6), and the west one-half ($\frac{1}{2}$) of the northeast quarter of said section, and on the tenth of April, 1839, a patent issued to said Wooden for said tracts. That at the time of Wooden's entry the number of the entry of the west one-half of said section, to-wit: No. 7,417, was entered on each of the quarters composing said one-half section, viz.: the northwest quarter and southwest quarter, and the number of his entry of the eighty acre tract, viz.: No. 7,418, was entered on said tract on the plat of said section, and at the same time the fact of his entry was stated by the register in the tract book, showing the description and quantity of the tracts, the date of the entry and the name of the purchaser. That afterwards, to-wit: on the sixth day of July, 1836, one Edward Jenner Smith applied to the register to enter or purchase the remainder of said section thirty-six, to-wit: the southeast quarter of said section, and the east one-half of the northeast quarter. That at the date of Smith's application Wm. Wright was still register, and the plat book and tract book both showed that the said southeast quarter and east one-half of northeast quarter of said section were vacant, and that the west one-half of said section, and west one-half of the northeast quarter had been sold in 1834 to Robert Wooden. That Wm. Wright agreed to sell and did sell to said Edward Jenner Smith, said southeast quarter, and the east one-half of the northeast quarter of said section, and that Wm. Wright, the register, at the instance of said Smith, filled up a blank application in furtherance of said sale; but, in so doing, by mistake in describing said southeast quarter, substituted the letter W, instead of the letter E, by reason of which said mistake said application described said quarter as the southwest quarter instead of the southeast quarter of said section thirty-six.

That said Wm. Wright, on the return to him by said

Smith of said application, with the certificate of the receiver indorsed thereon, showing the payment to said receiver of the purchase price of a quarter section, and eighty acres, and, failing to discover the mistake in the description in said application, did, on the day said sale was made, enter the fact of said sale on his tract book by the correct description, viz.: the southeast quarter and the east one-half of the northeast quarter, of said section thirty-six, sixty-four, six (immediately under the entry of the sale to Wooden), giving in his said entry the date of said sale and the name of the purchaser, viz.: the said Edward J. Smith; and did, also, at the same time enter the number of said entries on both said tracts on his plat book, viz.: on the southeast quarter, No. 14,513, and the east one-half of the northeast quarter, No. 14,513; and that said entries made by William Wright, the register, at the time of the sale, remained on said plat of said section and on said tract book unchanged, as late as 1858, a period of twenty-two years. The court further finds that at some time between 1858 and the spring of 1871 said entries were changed as follows, viz.: in the entry on the tract book of the sale of the southeast quarter to Edward J. Smith, dated July 6, 1836, the letter E in the description of the quarter section was erased, and the letter W substituted, so as to make said description read after said erasure and substitution the southwest quarter instead of the southeast quarter, thus making it appear that the southwest quarter had been twice sold—once in 1834 to Robert Wooden, and again 1836 to Edward J. Smith; and at the same time the number of Smith's entry, indorsed at the time by the register on the southeast quarter on the plat of said section was erased, and the same number indorsed on the southwest quarter, immediately under the number of Wooden's entry on said quarter; that said erasure and alterations were not made by William Wright because, first, they are not in his hand writing; second,

they were made after 1858, and consequently after his death. By whom they were made the evidence does not show. It discloses the fact that plaintiff had an opportunity to have made them, and availed himself of them after they were made.

After said erasures and alterations were made, and at the time of plaintiff's entry, May 10, 1871, the inspection of the plat, the number of Smith's entry on the southeast quarter having been erased and entered on the southwest quarter under the number of Wooden's entry of that quarter, the plat would show the southeast quarter vacant, and on inspection of the tract book it would show Wooden's entry in 1834, of the southwest quarter, and Smith's entry in 1836, of southwest quarter, and the southeast quarter consequently vacant, or subject to sale; said plat and tract book would, however, further show that there had been an erasure on the portion of the paper occupied by the letter W in the description southwest quarter, and that said letter W was in a different hand writing from the remainder of the entry, and apparently a much later date, and the inquiry would naturally suggest itself to plaintiff's mind, what letter had been erased, and it would occur to him it could have been no other than the letter E; and if so, then the original entry of sale must have been the southeast quarter. Looking from this to the plat of the section in the plat book he would there see that an entry had been made on the plat of the southeast quarter and erased, and that the number corresponding to the tract, originally the southeast quarter on the tract book, was entered on the southwest quarter immediately under the number 7,417, corresponding to Wooden's entry. With these facts before his eyes, it would suggest itself to him that one of two states of fact' must exist; either, first, that the register had sold the southwest quarter twice—once to Wooden and again to Smith, and had by mistake entered on his tract book and

plat, the sale to Smith of the southeast quarter instead of the southwest quarter, or he had in fact sold the southeast quarter to Smith and entered the memorandum of sale on his tract book and plat correctly, but made the mistake in the application, and that the original entry had been erased and altered contrary to the facts. These facts, in connection with the other circumstances proved, were *sufficient* to have put him, as a conscientious and prudent man, on *inquiry*, and if he had gone to the locality of the land, he would have learned that at all times, since the entry in 1836, Smith and those under him had claimed to own the southeast quarter, and had never set up any claim to the southwest quarter, which was claimed alone by Wooden.

Under this state of facts the court finds that the equitable title at the time of the entry by plaintiff, viz.: May 10, 1871, and at the time the patent issued to plaintiff, December, 15, 1871, was in the defendant, Sally F. Johnston, sole heir at law of Theodore Jungher, deceased, and the defendant Lucretia Jungher, widow of said Theodore, by operation of the muniments of title read in evidence by defendants viz.: the deed of E. Jenner Smith to John Smith ; the will of John Smith ; the deed of Smith and Haslett, executors of John Smith, to Mary C. Buck, and the deed of Mary C. Buck to Theodore Jungher ; and the plaintiff, in making said entry and accepting said patents, with notice of such facts and circumstances as were sufficient to put him upon inquiry to such equitable title, took said patent, with notice of such equity then in defendants, and held the same in trust for defendants ; and the defendant, Childers, being in possession of fourteen acres of said tract, as tenant of McKee and McKee, grantees of defendants, Johnston and Jungher ; that consequently, said facts are a good equitable defence to plaintiff's action, and the verdict on the plaintiff's action is for the defendant, Childers. It further appearing that the defendants,

Sally F. Johnston and Lucretia Jungher, by their deed dated May 5, 1873, conveyed all their rights, title, and interest (to-wit : their equitable title) to Samuel McKee, John W. McKee, E. Pratt Buell, and John Fallon, in and to one hundred and twenty-five acres of said southeast quarter, lying west of Fox Slough; on the 18th of June, 1875, conveyed by deed their title to the remainder of said tract, lying east of said Fox Slough to Buell and Fallon, viz.: thirty-five acres; and that at the institution of this suit said defendants, Johnston and Jungher, had no title or interest in said southeast quarter, having previously conveyed the same to said Samuel and John McKee and said Buell and Fallon, none of whom are parties to this action, and the court being of opinion that no affirmative relief can be given in this action on the cross petition to defendants, Johnston and Jungher, because, not being the owners of the equitable title, they are not entitled to a decree vesting in them the legal title; nor can relief be given to said McKee, Buell and Fallon, the present owners of the equitable fee, because they are not parties to this suit.

It is, therefore, considered that the plaintiff takes nothing by his writ in this cause, and that defendants go hence without day, and that defendants have and recover of plaintiff their costs in this suit expended, and that the cross action by defendants, Johnston and Jungher, be dismissed without prejudice to any independent action they may hereafter institute against plaintiff and the vendees of defendants for the relief sought in said cross action.''

From this finding and judgment the plaintiff, in due form and manner, has brought the case here by writ of error; and this finding and judgment is here assigned for error.

The separate answer of the defendants, Lucretia Jungher, Sally F. Johnston and H. Will Johnston, her husband, upon which the case was tried, as we have

seen, among other things, sets up two defences : first, the statute of limitations ; second, an equitable defence, to the effect, that one E. Jenner Smith, under whom defendants claim, had applied to enter, and in point of fact had entered and paid for, the land in question, but that, by *mistake* in his written *application* therefor, the southwest quarter of said section, instead of the southeast quarter, was inadvertently inserted therein, and that plaintiff afterwards, with notice thereof, wrongfully entered the same and procured a patent therefor in fraud of their rights in the premises ; and thereupon asked the court that the plaintiff be declared a trustee for said defendants, or those claiming under them, and that the legal title thus acquired and held be divested out of plaintiff and vested in these defendants, or those claiming under them, by virtue of the warranty deeds, hereinbefore referred to and specified. As to the statute of limitation, set up in the answer, it is sufficient to say : first, that the evidence shows no such *actual* possession of the premises as is sufficient to support said plea: second, if it did, under the ruling in the case of *Gibson v. Chouteau et al.*, 50 Mo. 85, and other cases following it, it would not avail them in this case, as the legal title had not passed from the general government a sufficient length of time to enable that defence to attach or become operative.

The only remaining and real question in the case is as to the sufficiency of the facts in evidence to support the findings and judgment in question ; and if so, what modification of the judgment, if any, the circuit court ought to have rendered upon the facts so found and in evidence in the cause. It is contended for the plaintiff that the evidence does not support the findings and judgment ; while the defendants insist that it does ; and also claim that the circuit court should have proceeded to grant the affirmative relief demanded, and divest and re-invest the legal title, as prayed for in their

answer ; and they now ask this court to render such judgment or decree as the circuit court should have done. After a careful and patient examination of the record we are satisfied that the findings of the circuit court are fully supported by the evidence in the cause, and that upon the whole case the law is with the defendants. The material and controlling questions in the case are but two : first, was there a *mistake* in the entry of said Smith, and subsidiary to this, in what did that mistake consist ; did it happen, as charged, in filling up the blank or witten *application* therefor with a wrong number or letter, or did it occur in the "notations" of said entry, as made by the register at the time upon the plat and tract books of said land office? Second, if such a mistake was, in fact, made and occurred, as claimed, in said written application, and not in the notations thereof upon the books of said office, did the plaintiff, at the time of his entry and the date of his patent, have knowledge thereof ; or had he notice of such facts and circumstances as should have put a prudent and conscientious man upon inquiry, and would have led to such knowledge, if inquiry had been made?

If there was such a mistake, of which there can be no doubt, and if the plaintiff had such knowledge, of which there can be just as little, then the law is clear that the plaintiff is chargeable with knowledge of such prior entry ; and in such event his subsequent entry, with such notice, was a fraud upon said prior entry, and those claiming thereunder, and he will be held to be a trustee for them and compelled to convey the legal title, thus acquired and held, to the parties thus defrauded, or to those claiming under them, by deeds of general warranty. Story's Equity, section 395, and authorities cited. It is conceded by the defendants, that the application and patent, as made and issued, in the absence of proof to the contrary, are presumed to be correct. Not only so, but they also concede that the

contrary cannot be made to appear, except upon the clearest and most satisfactory proof. But they claim, and we think correctly, that they are not absolutely conclusive and may be rebutted if the facts and circumstances in evidence are strong enough to satisfy the mind and conscience of the chancellor. It was upon this theory, and to this end, that all their testimony was directed. They insist that the mistake was not only made in the original application, but that it was inadvertently reproduced and continued in the register's certificate, the monthly and other reports of the local to the general land office, and finally consummated in the patent itself, and never discovered by the defendants, or those under whom they claim, until this suit was brought. The evidence of the plaintiff, consisting mainly, as it does, of the papers, certificates, reports, and documents is in no just sense in rebuttal of defendants' testimony, designed and tending to show, as it does, such mistake. These documents are admitted to be, as claimed by plaintiff, but it is charged that they so appear only by reason of the mistake alleged and proved by the defendants. This testimony of plaintiff, therefore, only tended to prove what defendants had already alleged as the foundation of their equitable defence, and of itself, is no answer to the case made by the defendants' evidence.

The laws of congress and the regulations of the land department recognize this right and provide for correcting such mistake, if discovered, and timely application is made to the land department while the legal title remains in the general government. Revised Statutes of United States (2nd. Ed.) p. 434, sections 2369 and 2372 inclusive; Public Lands, Laws, Instructions and Opinions, part 2nd, pages 451 to 457. After the title has passed from the government to individuals, and the question has become one of private right between citizens, and litigation ensues, then the jurisdiction of such questions is remitted to courts of the county, whose

common law jurisdiction enable them to inquire into and determine the case as equity and good conscience may require. *Johnson v. Towsley*, 13 Wall. 72; *Minnesota v. Batchelder*, 1 Wall. 109; *Silver v. Ladd*, 7 Wall. 219; *Stark v. Starrs*, 6 Wall. 402, and *Carman v. Johnson*, 29 Mo. 84, and same case, 20 Mo. 108. In addition to the special findings of the circuit court the record discloses other facts and circumstances tending to the same result. It appeared that when application was made to enter land, at this and other like offices, the usual routine was for the register to open, exhibit and examine the plat and tract books of said office, which indicated what lands were vacant and subject to entry, and what had already been sold; that upon such examination, it was customary for the applicant to point out or indicate upon the plat book the land he desired to enter; whereupon it was usual for the register to fill up a blank or written application with the numbers or description of the land thus selected, which the applicant signed; and, upon its presentation to the receiver and the payment of the purchase money, the receiver gave the purchaser a certificate to that effect, and, upon its production to the register, he *noted* upon said plat book the *number* of said entry, by writing it upon the *face* of the tract so entered, as the same appeared on said plat book or survey; and, also, by stating, in writing, the fact of said entry upon the tract book, giving description or number of the land, date of entry, name and residence of the party so making said entry. It also appeared that the monthly and other returns from the local to the general land office were frequently, if not generally, made up from an inspection of the written applications alone, without comparing them with the "notations" of said entry, as made at the time by the register on the books of the office, as was the more formal mode.

It also appeared that at the date of Smith's application and entry in 1836, the tract and plat books, in said land office presented this appearance:

Widdicombe v. Childers.

## PLAT BOOK.

## TRACT BOOK.

| | Section. | Township. | Range. | Quan'ty Acres. | 100ths. | To Whom Sold. | Residence. | When Sold. |
|---|---|---|---|---|---|---|---|---|
| West half.<br>West ½ N. E. ¼ | 36 | 64 | 6 | 640<br>320<br>80 | | Robert Wooden.<br>" " | Lewis Co., Mo.<br>" " " | November 8, 1834.<br>" " " |

After his said entry said books offered this appearance:

## PLAT BOOK.

Widdicombe v. Childers.

## TRACT BOOK.

| Section. | Township. | Range. | Quan'ty Acres. | 100ths. | To Whom Sold. | Residence. | When Sold. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 36 | 64 | 6 | 640 | | | | |
West half. | | | | 320 | | Robert Wooden. | Lewis Co., Mo. | November 8, 1834.
West ½ N. E. ¼ | | | | 80 | | " | " " " | " " "
E. ½ N.E. & S. E. | | | | 240 | | E. Jenner Smith. | " " " | July 6, 1836.

And after the erasures, alterations and mutilations of the records, spoken of, by which the *number 14,513*, on said plat book had been *erased* from the southeast quarter of said section, and *transferred* to the southwest quarter thereof ; and, by which, also, the letter "*E*" in Smith's entry, on the tract book, had been *erased* and the letter "*W*" substituted therefor ; and, also, after plaintiff's said entry thereof the said books gave this appearance, except that this diagram don't exhibit the *evidence* of said erasures, alteration and substitution, still *apparent* on the original books:

### PLAT BOOK.

EXHIBIT "A." GOTT'S DEPOSITION.

Widdicombe v. Childers.

## TRACT BOOK.

EXHIBIT "B."    GOTT'S DEPOSITION.

| | Section. | Township. | Range. | Quan'ty Acres. | 100ths. | To Whom Sold. | Residence. | When Sold. |
|---|---|---|---|---|---|---|---|---|
| West half. West ½ N. E. ¼ E. ½ N.E. & S.W. S. E. ¼. | 36 | 64 | 6 | 640 320 80 240 160 | | Robert Wooden. E. Jender Smith. A. C. Wide-combe. | Lewis Co., Mo. " " " " " " A. C. Scrip, Ky. No. 1,520 | November 8, 1884. " " July 6, 1836. May 10, 1871. |

Indeed, the plaintiff, himself, speaking of the appearance of these books and of what he saw at and prior to his said entry, on cross-examination, testified as follows:

"I discovered the southeast quarter thirty-six, sixty-four, six, west, was vacant, while employed in making an examination of the records to purchase for a party in Scotland county an eighty acre tract where there were three applicants at the same time for the same piece of land, one of whom was sheriff of Scotland county. There had been a correction, alteration, or erasure, call it as you please, on the plat and tract books in the register's office in section thirty-six, township sixty-four, range six, west, and I saw it before I made the entry. In the plat book whereon the numbers of entries are posted, in section thirty-six, and on the southeast quarter of said section, there is a perceptible erasure. On the tract book the letter "W," in the Smith entry, appears to have been made with a heavy stroke of the pen, and has a much heavier and darker appearance than the letter "S" preceding it, and has the appearance of having been changed from some other letter, and the letter "E" is the only letter over which the letter "W" could have been written, so as to have

formed a correct description of any other entry either in that or any other section, or the description of lands similarly situated."

It further appeared, also, that the plaintiff at a time prior to the time of his said entry, was familiar with the routine, rules, regulations and customs of said land office pertaining to the entry of lands; that he was frequently at the office; spent much of his time in examing its records, books and papers—with all of which he had great familiarity; and that he did a large practice, as a lawyer, in contested cases of entry, before said office. To a casual applicant, unfamiliar with the routine and records of said office, such erasures and alterations, if noticed at all, might not have suggested that said land was not subject to entry, or that another had any claim thereto; but not so with this plaintiff, whose practiced eye, experienced judgment and familiar knowledge of such things, we are constrained to believe, would have enabled him to comprehend, at a glance, not only that a *mistake* had been made in said entry, but, also, to determine in what that mistake consisted. From what he testified he saw on the face of the books, from his knowledge of the custom of transacting business in said office, and his familiarity with its records, he could scarcely fail to know that the mistake must have been in the *application* for the entry, and not in the "*notations*" thereof, as made upon the books of said office; and, also, that said erasures and alterations—plainly visible upon the face of said books, by whomsoever made—caused them to *appear*, in their mutilated and altered condition, contrary to the *actual* facts of the transaction, as they must have occurred and been recorded by the proper officer, at the time. As an intelligent lawyer and an adept in such matters he must have known that the register had no right and would not knowingly permit Smith to enter a tract already sold to another; and that Smith would not intentionally enter or apply to enter

land which he must have seen was already purchased by another. To say the least of it, they were such facts and circumstances as should have put him on inquiry, and would have led, if properly pursued, to a knowledge of such mistake, and the claim of these defendants, and those under whom they claimed, as well as of those claiming under them.

This record discloses the further fact that upon the institution of this suit against the tenant, Childers, the parties to whom these defendants had sold the land, by deeds of general warranty, purporting to convey an indefeasible estate in fee-simple absolute, notified these defendants and required them to defend said action and protect their rights in the premises ; and that, thereupon, said defendants put in their answer and made the defence, and also asked the circuit court to grant them appropriate affirmative relief and divest the plaintiff of the legal title and invest these defendants, or those claiming under them, by such warranty deeds with the same, etc. We have been cited to the cases of *Sensenderfer v. Smith*, 66 Mo. 80 ; *Sensenderfer v. Neale*, 66 Mo. 669 ; and *Widdicombe v. Mercer*, 72 Mo. 588, as holding a doctrine contrary to the views here expressed. This, we think, to a great extent, is a misapprehension of these cases. When carefully considered it will be found that these cases—especially the first, upon which the other two are based—recognize in direct terms the views here expressed. The other two cases, also, substantially do the same thing. The most that can fairly be said of these cases is, that the evidence preserved in the record of these several cases was not sufficient, in the opinion of the court, to sustain the equitable defence, set up in the answer ; or to support the finding of the court thereon. This was the only real point in judgment in all these cases ; and any seeming conflict therein with the views here expressed, if any there be, will be found, upon a careful examina-

tion of the whole context, to be rather colorable than substantial. The leading case, also, it will be seen, puts the decision, in part, at least, on the fact, that if the party had originally made such mistake, by his subsequent conduct he had acquiesced in the same for many years, and was, therefore, estopped from asserting the same against a party subsequently purchasing the land. In any event these cases, in many respects, are unlike the case at bar. There, the evidence was mostly, if not entirely, oral, and given from memory twenty years or more after the occurrences to which they relate. Here, it is supplied mainly, by the original records themselves. There, it was comparatively meager, whilst here it is abundant.

If parties negotiating about a tract of land or town lot should go to the premises, and upon, inspection, should agree touching the sale and purchase thereof, and thereupon draw up and execute a deed of conveyance, and by mistake insert therein wrong numbers, would anyone doubt that upon satisfactory proof of the mistake, a court of equity would correct the same? Suppose, instead of that, they should go to a plat of the town, or of the public lands, and, upon inspection thereof, should select and bargain for a given quarter section of land or town lot, and make a similar mistake in the deed of conveyance, would not the same result follow? This, in substance, is precisely what the evidence shows occurred in Smith's entry of the tract of land in question.

We are of opinion, therefore, that the special findings of the circuit court as to the mistake in question and plaintiff's knowledge or notice thereof are fully supported by the evidence in the cause, and that they constitute a good defence to plaintiff's action, and that the court did right so to find and declare. We are also of opinion that under the facts and circumstances in evidence the ends of justice would have been best promoted and preserved by granting to the defendants the

affirmative relief asked for, especially as under operation of section 3940, Revised Statutes, 1879, the title so acquired would instantly enure to the benefit of of those claiming under the defendants by deeds of general warranty, and thus save unnecessary litigation, expense and delay.

Wherefore, it is here ordered and adjudged by this court that the judgment of the circuit court be reversed; and that such judgment as it should have rendered, as hereinbefore indicated, be, and the same is hereby ordered and rendered; and that the same be entered up in due form accordingly. *Kritzer v. Smith*, 21 Mo. 302; *Philips v. Stewart*, 69 Mo. 149; *Morgan v. Chicago & Alton R. R. Co.*, 76 Mo. 178, and section 3776, Revised Statutes, 1879. All concur.