Priest v. Way.

PRIEST, *Executor*, v. WAY *et al., Appellants.*

1. **Variance.** In an action for the fraudulent abstraction and conversion of property, there can be no recovery on the ground that it was obtained as a gift by the exercise of undue influence.

2. **Actual Fraud, Proof of.** Actual fraud must be proved, not conjectured. Facts which give rise only to suspicion of its existence do not establish it.

3. **Deposition: ADMISSION.** The deposition of a party to a cause may be read in evidence against him in another cause as an admis-

Priest v. Way.

sion, but it cannot be so read in the same cause in which it is taken.

4.  **Evidence:** POSSESSION. The possession of a check is *prima facie* evidence of its ownership by the holder.

5.  ——: BURDEN OF PROOF. The burden of proving the fraudulent abstraction of money is on him who alleges it.

6.  **The evidence in this case** reviewed and the charge of fraudulent abstraction and conversion of moneys belonging to plaintiff's estate held not made out by the evidence.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Glover & Shepley* and *G. H. Shields* for appellants.

(1)  The presumption in favor of innocence holds in all civil cases in which it comes collaterally in question. *Case v. Case*, 17 Cal. 598; *Bradish v. Bliss*, 35 Vt. 326; *Klein v. Landman*, 29 Mo. 259; *Murray v. Murray*, 6 Ore. 17; *Spears v. Burton*, 31 Miss. 547; *Lockhart v. White*, 18 Tex. 102; *Sharp v. Johnson*, 22 Ark. 75. (2) A gift may be presumed from possession and the relations of the parties, and the circumstances of the case without direct evidence. *Hill & Dale v. Duke*, 6 Ala. 259; *Teague v. Griffeth*, 2 Mon. 2; *Davis v. Dunken*, 1 McCord, 213; *Collins v. Loftus & Co.*, 18 Leigh (Va.); 3 Henning and Mumford, 127; *Brown v. Handley*, 7 Leigh, 19 (Va.); *Nation v. Johnson*, 7 Leigh 317; *De Graffenreid v. Mitchell*, 3 McCord, 56; *Creed v. Lancaster Bank*, 1 Ohio St. 160. (3) Evidence of a gift was admissible under the general denial. Pomeroy on Remedies and Remedial, Rights, §§ 677-9; *Andrews v. Bond*, 16 Barb. 673; *Willard v. Giles*, 24 Wis. 319. (4) The report of the referee is conclusive on a question of fact, if there is any evidence to support it. *Brooks*

*v. West,* 3 Mo. App. 582 ; *Wood v. Staats-Zeitung,* 3 Mo. App. 602 ; *Woodroe v. Younger,* 61 Mo. 395 ; *Franz v. Detriek,* 49 Mo. 495 ; *Western B. B. A. v. Kribben,* 48 Mo. 37.    (5) Notwithstanding the provisions of the code, the plaintiff cannot allege a tort and recover on an implied contract or a trust.    *Hale v. Omaha Nat. Bank,* 39 N. Y. Sup. Ct. 207 ; *Bailey v. Southwick,* 6 Lan. 356 ; *Booth v. Farmers', etc., Nat. Bank of Rochester,* 1 Thomp. and C. (N. Y.) 45 ; *Fish v. Clelend,* 33 Ill. 338 ; *Singleton v. Pacific Railroad,* 41 Mo. 445 ; *Goldsmith v. Boersch,* 28 Ohio, 351 ; *De Graw v. Ellmore,* 50 N. Y. 1 ; *Link v. Vaughn,* 17 Mo. 585 ; *Beck v. Ferrars,* 18 Mo. 30 ; *Robinson v. Rice,* 17 Mo. 289 ; *Penseman v. Penseman,* 22 Mo. 35.    (6) If fraud is alleged by the bill, relief cannot be had by proving only a case of constructive fraud.    Kerr on Fraud, 383 ; *Wilde v. Gibson,* 1 House Lds. Cases, 604 ; Lord Cottenham, 620–1 ; *Parks v. Jewell,* 1 Kay & Johnson Ch. 671 ; Lord Hatherly, 673. (7) The refusal of the referee to allow Mrs. Way to testify for herself, after she had been called and examined by plaintiff, is error, for which the judgment of the court of appeals should be reversed.    It was admitted at the hearing that Mrs. Way was examined under the original petition, and that she was suddenly placed upon the stand without notice, and without having been subpœnaed.    (8) The objection to the competency of a witness is waived by calling the person as a witness, or by cross-examination.    *Tinsley v. Lirely,* 25 Ala. 123 ; *Donelson v. Taylor,* 8 Pick. 390 ; *Kelley v. Brooks,* 25 Ala. 523.

*John F. Dillon* also for appellants.

(1) The issue arising upon the pleadings is the question of the fraudulent abstraction and conversion of money.    *Andrews v. Bond,* 16 Barb. 633 ; *Gregory, etc., v. Selleck,* 43 Conn. 320.    (2) The burden of proof is on

plaintiff. 1 Greenl. on Ev., sec. 80. There is no difference in respect to burden of proof between proceedings at law and in equity. 1 Dem. Ch. Prac. 850; *Pusey v. Wright*, 31 Pa. St. 387. Possession of property, and especially of money or negotiable paper, imports delivery and title in the holder, and the presumption thus raised must, in all cases, be rebutted by affirmative proof that the possession is fraudulent or unlawful. *Worcester, etc., v. Dorchester, etc.*, 64 Mass. 491; *Jones v. Chalmers*, 2 Seld. 214; *Potter v. Chadsey*, 16 Abb. 146; *Goodman v. Harvey*, 4 A. & E. 870; *Dolfus v. Frosch*, 1 Den. 367; *Pinkerton v. Bailey*, 8 Wend. 600; *Arboum v. Anderson*, 1 Q. B. 504; *Pratt v. Adams*, 7 Paige, 629; *King v. Milsom*, 2 Camp. 5. (3) The result of the testimony is to raise the presumption of a gift. *Bedell v. Carll*, 33 N. Y. 581. Mrs. Way should have been permitted to explain her deposition. *Samuels v. Griffith*, 13 Ia. 113; 1 Greenl. on Ev. sec. 462. (4) Plaintiff's case fails, whatever may be adjudged respecting the sufficiency of the evidence to affirmatively show gifts. (5) The court could not divest Mrs. Way's title on the ground that it was obtained by the exercise of undue influence. The only issue raised by the pleadings is conversion, a denial of title in defendant. The jurisdiction of a court of equity, like that of a court of law, is confined to the issues raised by the pleadings. *Mayo v. Harding*, 3 Tenn. Ch. 237; *Vansciver v. Bryan*, 2 Beas. 434; *Munday v. Vroom*, 5 Vroom, 418; *Easley v. Tarkington*, 5 Baxt. 592; *Marsh v. Mitchell*, 26 N. J. Eq. 497; *New York, etc., v. Moore*, 32 Hun, 29. (6) The law will never construe a possession tortious, but from necessity. *McEwen v. Portland*, 1 Ore. 300.

*Smith & Krauthoff* and *E. T. Farish* for respondent.

(1) This action is an equitable one, was instituted as such, and was so tried and treated before the referee,

in the circuit court and court of appeals. *Smith v. Kay,* 7 H. L. Cases, 750. (2) Relief, on the ground of presumptive or constructive fraud, arising from the condition or relation of the parties, and in the character of the transaction, is peculiarly within the jurisdiction of equity. *Hall v. Perkins,* 3 Wend. 626-31; 1 White & Tud. Lead. Cas. Eq. part 2 (4 Am. Ed.) p. 827; 1 Story Eq. Jur. (11 Ed.) sec. 190; *Billage v. Southel,* 9 Hare, 534. And when an agent uses property of his principal in his hands for his own purposes, he commits a breach of trust, the redress of which lies within the jurisdiction of a court of equity. *Persch v. Quiggle,* 57 Pa. St. 247, 258-9; Big. on Fraud, 323; *Chaney v. Gleason,* 117 Mass. 557-8; *Dodd v. Cook,* 11 Gray, 495-6. (3) If the defendant applied trust funds in his hands to uses and purposes foreign to his duties as managing agent, the property in which it was invested was impressed with a constructive trust in favor of his *cestui que trust.* 2 Pom. Eq. Jur., sec. 1051; 1 Perry on Trusts (3 Ed.) secs. 166, 168, 194, 196; *Grumley v. Webb,* 44 Mo. 444, 451; *Garvin v. Williams,* 44 Mo. 465, 475. The holder of the property became a trustee *ex maleficio. Squires' Appeal,* 70 Pa. St. 266, 268-9. This trust could only be ascertained and declared by a court of equity. And so equity alone could follow the trust fund into the property into which it had been converted, and enforce the trust against it. *Sherwood v. Saxton,* 63 Mo. 78, 82-3. (4) The separate property of a married woman can only be charged with and subjected to the payment of a demand, in equity. And even if a court of equity had obtained jurisdiction of the case upon this ground alone, it would have been in all respects triable according to equity rules. *Keeton v. Spradling,* 13 Mo. 321; *Corby v. Bean,* 44 Mo. 379. (5) The plaintiff established his case in chief when it was shown that a confidential relation, within the meaning of the rule hereinafter stated, existed between Mrs. Perry and the defendants, during the pendency of which they

received these checks, and that they subsequently invested the same in Mrs. Way's name, or for her benefit. Such investment, under these circumstances, constituted presumptively, a "fraudulent conversion." This was so, independent of any elements of actual fraud or undue influence, actual or presumed, in the transaction. *Street v. Goss*, 62 Mo. 226, 228-9. It then devolved upon the defendants to show that these checks passed to them by gift or under a contract. The gift or contract claimed would be attended with a presumption of fraud and undue influence, which it devolved upon the defendants to rebut. *Miller v. Simonds*, 72 Mo. 669; *Street v. Goss*, 67 Mo. 221; 2 Pom. Eq. Jur., sec. 956; *Tate v. Williamson*, L. R. 2 Ch. App. 55, 59; *Rhodes v. Bate*, 1 Ch. App. 252; 1 Story's Eq. Jur. (11 Ed.) sec. 258; Ewell's Evans on Agency, 351; *Greenfield's Estate*, 14 Pa. St. 489; *Garvin v. Williams*, 44 Mo. 465; 50 Mo. 206; *Walker v. Smith*, 29 Beav. 394; *Bennett v. Austin*, 81 N. Y. 308; Bigelow on Fraud, 231; *Hugueman v. Baseley*, 14 Ves. 273. (6) But even if all consideration of Way's agency and fiduciary capacity, and of a confidential relation between the parties, is excluded and eliminated from the case, before the defendants can hold this large sum as a donation, they must show, first, the donation, and then its validity. *Cooke v. Lamotte*, 15 Beav. 234, 239, 243; *Coutts v. Acworth*, L. R. 8 Eq. Cas. 558, 566; *Russell's Appeal*, 75 Pa. St. 269, 279, 280, 287 to 291; Bispham's Eq. (3 Ed.) 292; 2 White & Tud. Lead. Cas. Eq. (4 Am. Ed.) 1188; 1 Dan. Ch. Pl. and Pr. (5 Ed.) *853; 1 Taylor on Evidence (7 Ed.) sec. 151. Nor can defendants escape this rule by invoking the doctrine that possession of negotiable instruments is *prima facie* evidence of title, for the rule has no place here. *Cass County v. Green*, 66 Mo. 498; *Smith v. Kay*, 7 H. L. Cas. 750; *Brock v. Barnes*, 49 Barb. 524. (7) The defendants have not satisfied the burden of proof which rested upon them. It is utterly impossible to believe that Mrs. Way would not have recol-

lected gifts aggregating $24,500. This money passed into her hands, and equity demanded that she should disclose the circumstances. She had the opportunity, was asked the question, and her failure to do so is equivalent to adverse proof. *Henderson v. Henderson*, 55 Mo. 534, 559; *Cass County v. Green*, 66 Mo. 498, 512; *Baldwin v. Whitcomb*, 71 Mo. 651, 658; *Mabury v. McClury*, 74 Mo. 575, 591. (8) Under our statutes (sec. 4010, R. S.) Mrs. Way was disqualified to testify in her own favor. *Silten v. Shipp*, 65 Mo. 297; *Ring v. Jamison*, 66 Mo. 429; *Ward v. Matthews*, 73 Mo. 482; *Wade v. Hardy*, 75 Mo. 490.

HENRY, C. J.—Mrs. Eliza M. Perry died in February, 1873, in the city of St. Louis, at the age of seventy-six, possessed of a large estate, consisting principally of notes and money. She was a childless widow, and the defendant, Mrs. Mary A. Way, was her cousin, between whom and herself existed intimate and cordial relations. John G. Priest is the executor of the last will and testament of Mrs. Perry, and, as such, institute l this suit against James C. Way and Mary Ann Way, his wife, charging in a second amended petition, that from January, 1870, until February, 1873, Mrs. Perry was an inmate of the house of defendants; that she was old and infirm, and possessed of large means, consisting principally of notes and money deposited to her credit in the National Bank of the State of Missouri. That she intrusted the drawing of checks to be signed by herself, and the management of her said bank account and the loaning and investment of her moneys, to James C. Way. That between January 1, 1872, and February 1, 1873, he made out checks to bearer signed by Mrs. Perry, drawn upon her said bank account, and aggregating $24,000, by which there was withdrawn from Mrs. Perry's funds said sum of money, which was received by Mr. and Mrs. Way, and converted to the separate use of the latter, without the

knowledge or consent of Mrs. Perry. That said money was fraudulently abstracted and used and employed by the defendant, Mary Ann Way, in real estate loans, or the purchase of real estate notes, for her use and benefit.

The petition then describes several lots, or parcels of land, in the city of St. Louis, in which nineteen thousand dollars of said sum of money is alleged to have been invested as above charged, and, also, a lot in St. Louis, held by Edwin Harrison, as trustee, for the sole and separate use of Mrs. Way, and concludes with a prayer for judgment against defendants for twenty-four thousand dollars, with interest, and that all of the above described property, held to the use of Mrs. Way, be charged with a lien for said amount, and sold, etc. The answer is a general denial.

Since the appeal to this court, James C. Way died, and the cause not having been revived against his representatives, Mrs. Way is now the sole defendant. The circuit court referred the cause to A. N. Crane, Esq., to take the testimony and make a report, which he did, recommending the dismissal of the bill, which was done by the court, after a hearing of exceptions to the report of the referee. On appeal to the St. Louis court of appeals, the judgment of the circuit court was reversed, and a decree entered in accordance with the prayer of the petition, and from that judgment defendants appealed to this court.

An analysis of the petition is necessary in order to ascertain the precise issues made by the pleadings; in other words, exactly what cause of action is stated in the petition, the answer being a general denial. It charges that betwixt Mr. Way and Mrs. Perry there was a confidential relation, and that he "made out checks payable to bearer, signed by said Eliza M. Perry, and drawn upon her said bank account, aggregating, etc., by which there was withdrawn from the funds of said Eliza M. Perry, the said sum of money *which was received by*

*the defendants*, and converted to the separate use of said Mary Ann Way without the knowledge or consent of said Eliza M. Perry." It then charges, "that said money was fraudulently abstracted and used and employed by defendant, Mary Ann Way, in real estate loans," etc. There is no direct charge against Mr. Way that he abstracted the funds, or that he fraudulently drew the checks, or by fraud, or undue influence, procured Mrs. Perry's signature to them. No constructive fraud is alleged against him. If he, having the management of her funds and business, received money belonging to Mrs. Perry, or her checks on her bank, and without her knowledge or consent, converted their proceeds to his own use, or to the use of his wife, he committed an actual fraud. So far as he is concerned, that is the specific charge against him, and, if proved, the plaintiff was entitled to recover against him.

The charges against Mrs. Way are two fold: (1) That on checks drawn by her husband and signed by Mrs. Perry, *they* withdrew from her bank account twenty-four thousand dollars, which was received by *them* and converted to her separate use, without Mrs. Perry's knowledge or consent. (2) That Mrs. Way fraudulently abstracted the money, etc. If either of these charges is proved against her, she is liable on this action. It is not charged that Mr. and Mrs. Way, or either of them, procured a gift of the money by fraudulent means, or by the exercise of undue influence over Mrs. Perry. On the contrary, the idea of a gift is utterly inconsistent with the allegation of the petition that "the money was fraudulently abstracted," etc. Therefore, if a gift was proved and the evidence should establish that it was procured by Mrs. Way, by the exercise of undue influence over Mrs. Perry, plaintiff could not, in this action, recover, for neither at law, nor in equity, can the plaintiff state one cause of action and recover upon another, totally different in its essential elements, certainly not upon one

inconsistent with that alleged. *Wisdom v. McVeigh*, 93 U. S. 282. It is scarcely necessary to cite authorities in support of this proposition of elementary law.

As to the case against Mr. Way, the relation between him and Mrs. Perry was not intimate, or confidential, but, on the contrary, the testimony establishes, beyond any controversy, that she positively disliked and distrusted him. To that effect is the testimony of Judge Gantt, Mrs. Allen, Mrs. Lindell, and others. It is true that she employed him to perform certain unimportant services for her, not involving the surrender of her own judgment to his, or indicative of more than ordinary, or any especial, confidence in him. It was confined to his filling up checks, at her request, for her to sign, performing errands to the bank, and making and keeping an inventory of her promissory notes, and accounts of payments made to her on them. He was not fully entrusted with the business of negotiating loans of her money. In these matters she invariably consulted Judge Gantt, her legal adviser. She sometimes acted upon Mr. Way's judgment as to the value of securities offered for loans solicited, and occasionally consulted others, but oftener Mr. Way than any other person, and this may be accounted for by the fact that she resided in his family and it was more convenient to get his services in these matters. There is no testimony in the cause proving, or tending to prove, that he ever had the control or management of her money. That he was occasionally entrusted with small amounts to pay specific items of her indebtedness, is true, but that he was her financial agent there is no proof.

With regard to the checks upon which the money alleged to have been abstracted was drawn, there is not a particle of testimony to prove that after he wrote the body of the checks and delivered them to her to sign, he ever had possession of them, or knew how she had disposed of them, until he received them from his wife.

They were all payable to Mrs. Perry, or bearer, and no connection of Mr. Way with the procurement of these checks by his wife is established by the evidence. There is no testimony showing that he knew that his wife had received them, or how or where she received them, until she delivered them to him to be deposited to her credit, and except that Mrs. Way was his wife, there is no more testimony to fasten upon him the charge of a fraudulent misapplication of the money than if Mrs. Perry had delivered the checks to a stranger, at whose request and for whose accommodation Mr. Way afterwards invested the proceeds. On the evidence there is no ground for anything but a mere suspicion of *mala fides* in the transaction, and that based upon the relation between Mr. and Mrs. Way. Facts which give rise to suspicion only do not establish actual fraud, which must be proved, and not conjectured. Even if in the paragraph charging a fraudulent abstraction of the money the pleader intended, or the petition is to be taken to charge both Mr. and Mrs. Way with the abstraction, there is no testimony establishing this fact against Mr. Way. If the money or checks had been delivered by Mrs. Perry to Mr. Way to be by him used for her benefit, or if, as her agent, he received her money and applied it to his own or the use of his wife, the burden would be upon him to show an authority to do so, but it must first be proved that he had the money and so used it, before any such burden could be thrown upon him. In confirmation of what we have said as to the confidence reposed in Mr. Way by Mrs. Perry, the testimony of a witness introduced by plaintiff, established the fact that on one occasion when this witness was on a visit to Mrs. Perry at Mr. Way's house, Mrs. Perry, with great secrecy and solemnity, delivered to her a sealed envelope, telling her to keep it until Mrs. Perry's death, and then hand it to her executor. The executor testified that that witness delivered to him the sealed envelope, and

all that it contained was a receipt she had taken from Mr. Way for five hundred dollars in full for his services to her. From this it would appear that instead of confiding in Mr. Way she was extremely suspicious of him.

As to the charges against Mrs. Way, there is absolutely no evidence which tends to prove that she fraudulently, or otherwise, abstracted the money, or got possession of the checks upon which it was drawn without the consent of Mrs. Perry. The only matter in the whole record which furnishes any foundation even for a conjecture that there was something wrong in the transaction, is Mrs. Way's bad memory with respect to it. She could not state what amounts of money she received as gifts from Mrs. Perry in 1871, 1872, or 1873. Could not approximate to it, notwithstanding these checks, aggregating twenty-four thousand dollars, were all received between January, 1872, and November, 1872. While this is surprising, yet it is to be recollected that her deposition was taken in February, 1881, nearly nine years after the transactions in question. Taken before the amended petition was filed, upon which the cause was tried, and taken under the original petition, not preserved in this transcript. Her attention was not called, either by plaintiff's counsel or her own, to the identical checks in controversy. She seems to have forgotten, however, other important facts, which but few persons would have forgotten. She did not recollect that she kept her bank account with the Haskell Bank, when the fact that she did is beyond dispute, and while she was keeping her account with that bank she must have known it. After her deposition was read, *not as a deposition*, but *as her admissions*, the privilege of explaining certain portions of it was denied her, and, in passing upon her testimony, so used against her, these facts are not to be overlooked. The use made of that deposition, however, was wholly unauthorized. The statute, section 4012, provides that: "Any party to any civil action or proceeding may com-

pel any adverse party, * * * to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses." Such adverse party may either be compelled to testify, if present at the trial, or if absent, his deposition may be taken. If the latter, then the officer taking it is required, by section 2156, to enclose it "sealed up, and directed to the clerk of the court in which, or the justice before whom, the cause is pending." When filed by the clerk they "may be read and used as evidence in the cause in which they shall have been taken, as if the witnesses were present and examined in open court on the trial thereof," but not if the witness whose deposition it is proposed to read is present. Mrs. Way was present at the trial, and made this specific objection, yet the referee permitted plaintiff to read the paper, *not as a deposition*, but as admissions *in writing* made by the defendant. This was error. It could be used in that manner in another cause, but not in that in which it was taken.

*Pomeroy v. Benton*, 77 Mo. 82, is authority in support of the practice, but the authorities there cited give no sanction to it. The deposition of a person taken in a cause may be read against him as his admissions in another cause. In *Kritzer v. Smith*, 21 Mo. 296, and *Charleson v. Hunt*, 27 Mo. 34, cited in *Pomeroy v. Benton*, the question was whether a deposition taken in another cause could be read as admissions against deponent. In *Kritzer v. Smith*, Judge Scott said: "In whatever light it may be viewed, we cannot see any ground on which the objection to the deposition of the defendant Smith, given in another action, could be upheld." In *Charleson v. Hunt*, 27 Mo. 34, Judge Richardson said: "On the trial of the issue made by the interplea, the plaintiff offered in evidence the deposition of Hunt which had been previously taken in a suit between Lattimer *et al.*, plaintiffs, and St. Michel, defendant, which was excluded because Hunt was in court in

obedience to a subpœna, ready to be called as a witness. The only point in this case was decided in *Kritzer v. Smith*, 21 Mo. 296." *Williams v. Cheney et al.*, 3 Gray, 220, cited in Weeks on Depositions, involved the same precise question, decided in the two Missouri cases above noticed. We are satisfied that where the deposition of a party to a case is taken by his adversary, it stands upon the footing of other depositions, and that the statute did not construct such a trap as the practice permitted on the trial of this cause would make it, if tolerated. That deposition should have been excluded, as a deposition, because Mrs. Way was present; as written admissions by her, because it was taken as a deposition in the cause, and excluded ; there is no ground whatever for plaintiff to stand upon. But even considering it for what it was worth, as her admissions or statements, she did not say that the checks in question were given to her, although, taking all the testimony, hers included, it strongly tended to establish that fact.

In 1873 Mrs. Perry made her will, by which she bequeathed to Mrs. Way an amount of money, which, added to the twenty-four thousand dollars, was but little short of half of her entire estate. Mrs. Perry was a woman of more than ordinary sagacity and prudence, as exhibited in the management of her estate, and there was no material impairment of her mental faculties to the day of her death. Her will was executed but a short time before that event, and the testimony leaves no room for doubt that she was then a woman of more than ordinary intellect and business capacity. She knew what she had and where it was, kept the run of her promissory notes and money, and if one of her notes was out of place or missing, soon discovered it. On one occasion a note of ten thousand dollars against Mr. Howe was missing, and she made inquiry of Mr. Bugg in regard to it the first time she saw him afterwards, stating the name of the payor and the amount of the note. This occurred

in 1872 or 1873. Yet, in 1872, on plaintiff's theory, twenty-four thousand dollars were abstracted from her funds, and from that time to her death, she made no inquiry concerning it; so far as this record shows, she never mentioned it to her trusted legal adviser, Judge Gantt, to Mrs. Beverly Allen, or Mrs. Jesse Lindell, her most intimate friends, or anyone else, and yet it is impossible to read the testimony in this cause and believe that such a diminution of her money on hand could have occurred and not been discovered by her, or that if it had occurred, and she had discovered it, that she would have remained silent in regard to it, and provided in her will more amply for those who had fraudulently abstracted the money than for any other of the persons named in her will. From her situation and surroundings, those whom she would have been most likely to suspect were the Ways, not that from their antecedents they were to be regarded as likely to commit such a wrong, but because their opportunities for committing it were infinitely greater than that of other persons.

The case is narrowed down to these propositions: (1) That Mrs. Perry delivered the checks to Mrs. Way, or (2) the latter fraudulently obtained possession of them without the knowledge or consent of Mrs. Perry. Of the latter there is no proof, and that they were delivered to Mrs. Way by Mrs. Perry, we think, there can, on the evidence, be no controversy. Such being the fact, if not intended as gifts to Mrs. Way, and she diverted them from the use for which Mrs. Perry delivered them to her and appropriated them to her own use, the burden is upon the plaintiff to prove it, and this he has utterly failed to do. No confidential relation is alleged to have existed between Mrs. Perry and Mrs. Way. Mrs. Way was not her daughter, nor, as plaintiff asserts, her adopted daughter. Her possession of the checks, and subsequently of the money drawn upon them, was *prima facie* evidence of her ownership. This proposition is

abundantly supported by the authorities. In *Arboum v. Anderson*, 1 Adolph. & Ellis (N. S.) 504, Lord Denman said: "Acting upon the case of *Goodman v. Harvey*, which gives the law now prevailing on this subject, we must hold that the owner of a bill of exchange is entitled to recover upon it, if he has come by it honestly, and that that fact is implied *prima facie* by possession, and that, to meet the inference so raised, fraud, felony, or some such matter must be proved." *James v. Chalmers*, 2 Seld. 214; *Dolfus v. Frosch*, 1 Denio, 371; *Nelson v. Cowing*, 6 Hill, 339. "The possession of personal property affords a *prima facie* presumption of ownership." 1 Phillips Ev. 647; *Webb v. Fox*, 7 T. Rep. 391; 1 Greenleaf Ev., sec. 34; *Vining v. Baker*, 53 Me. 544; *Fish v. Skut*, 21 Barb. (N. Y.) 333; *Millay v. Butts*, 35 Me. 139. The case of *Beale's Adm'r v. Dale*, 25 Mo. 301, is not in conflict with the foregoing authorities, as will appear from a careful examination as to the precise question involved in that case.

Mrs. Way's being in possession, "afforded a *prima facie* presumption of ownership," and this is not rebutted by proof that Mrs. Way, years after, had but an indistinct recollection of the condition of her estate in 1871, 1872, and 1873. That one cannot recollect what property he had at a given time, or how he acquired or disposed of it, does not warrant a judgment stripping him of his possessions, on the mere surmise that he did not come by it honestly. Mrs. Way's testimony is not as clear and satisfactory as might have been expected; but when it is considered that she had never managed her own pecuniary affairs; that she was not familiar with the details of such business, entrusting her own to the management of her husband, relying upon and confiding in him, it is not so surprising that after the lapse of eight or nine years she would have but an indistinct recollection of business transactions which *business men* would be expected to remember. These, in connection

with the facts that she was not examined directly with regard to those checks, but generally as to her pecuniary resources, not having those checks before her, or been favored by counsel with any especial allusion to them, should have saved her from any imputation upon her veracity or integrity, based upon that deposition. Aside from all this, it was not incumbent upon her to show how she obtained the checks or the money. It was charged against her that she "fraudulently abstracted the money" and it devolved upon the plaintiff to prove it, and the evidence wholly failed to establish the charge. The judgment of the court of appeals is reversed. All concur, except Sherwood, J., who dissents.

SHERWOOD, J., DISSENTING.—Regarding the majority opinion in respect of the inadmissibility of the deposition of Mrs. Way, as radically wrong, at war with reason, precedent and one of the plainest and most fundamental rules of evidence, I dissent; and will endeavor briefly to give my reasons therefor.

In *Slatterie v. Pooley*, 6 M. & W. 669, Lord Abinger said "that he had always considered it as clear law that a party's own statements were in *all cases* admissible against himself." Greenleaf says: "In regard to *depositions*, it is to be observed, that, though informally taken, yet as mere declarations of the witness, under his hand, they are admissible against him, *wherever he is a party, like any other admissions;* or, to contradict and impeach him when he is afterwards examined as a witness." Vol. 1, sec. 552. Wharton also lays down the law in the same way; and he makes no distinction between the admissibility of the sworn admissions of a party, whether examined in *another* cause or examined in the *same* cause. 2 Whart. on Evid., sec. 1120. Another text writer states the rule the same way. Weeks' Law of Depositions, sections 464, 470, 473, 518, 568. And the cases which have

passed into precedent fully sustain the text writers. Thus in *Robbins v. Butler*, 24 Ill. 387, Breese, J. said: "The admissions of a party to a fact, no matter when made or how made, are evidence against him, no matter if they be found in an answer in chancery, in a letter, or proved in some other mode. They are still his admissions and can be used against him." In *Carr v. Griffin*, 44 N. H. 510, the precise point under discussion was decided. The deposition of the defendant had been taken *in the same cause* and he was present at the trial. He objected to the deposition being read in evidence because informally taken, etc. But it was ruled that the signature of the defendant being proved, "the deposition might be used *as an admission*," and this ruling was affirmed on appeal. So, also in *Carter v. Beals*, *Ib.* 408, the deposition of Mrs. Beals was taken prior to trial. She was present thereat and testified and it was ruled on appeal, reversing the action of the lower court, that not only could the deposition be used on the trial for the purpose of contradicting her testimony, given *viva voce*, but the plaintiff *"might use it to show any admission it might contain."*

Similar rulings have been made in analogous cases. Thus, where the defendant had testified in the cause before a justice of the peace, and also on appeal to the county court, and the testimony he had given before the justice was admitted over his objection and this was held correct, Johnson, J., remarking: "As to the defendant himself, it was principal evidence against him, upon the issue. It was in the nature of admissions or declarations by a party, which are always competent as principal evidence against the party making them. It was also competent as impeaching evidence against him, or his witness." *McAndrews v. Santee*, 57 Barb. 193. A like ruling was made in *Woods v. Geveeke*, 28 Iowa, 561. So, too, in *Hall v. Emily Banning*, 33 Cal. 522,

it was said by Rhodes, J.: "The rule is settled beyond all controversy that the admissions or declarations of a party to a suit are admissible as evidence against the party making them. * * * We do not understand that the result of the permission, given by statute to the parties to an action to testify in their own behalf, has blended in one the different characters of party and witness, nor obliterated the distinction between admissions of parties against interest, and statements out of court contradictory to their testimony at the trial."

But it is needless to go outside of our own reports in search of precedents adverse to the majority opinion. Thus in *Pomeroy v. Benton*, 77 Mo. 64, it was expressly ruled that a deposition of a party defendant, taken in the *same cause*, could be read in evidence on the trial of that cause, *as an admission*. And in *State ex rel., etc., v. Nat. Bank*, 80 Mo. 626, it was said by Martin, C.: "The deposition of Mrs. Goldsoll was competent evidence against her, being in the nature of admissions, or statements adverse to her pretended rights, * * * A party's deposition, as a written statement of facts, is admissible, although he may be present to testify or has testified." And even in a *criminal* cause, it was ruled by this court, Henry, J., delivering the opinion, that the testimony of a party defendant on a former trial might be used against him on the second trial of the same cause. *State v. Eddings*, 71 Mo. 545. On what ground were the statements of the defendant thus used? Plainly as his *declarations or admissions of facts* material to the issue being tried. If so, in what respect do such declarations or admissions differ from similar ones made by a party on the street or in the more solemn form of a deposition? The majority opinion attempts to make a distinction between the deposition of a party taken in *another suit*, and one taken in the *same suit;* concedes its admissibility in the *former* case, but denies it in the *latter*.

The cases of *Kritzer v. Smith*, 21 Mo. 296, and *Charleson v. Hunt*, 27 Mo. 34, though they affirm the admissibility of the deposition of a party in a pending suit, when such deposition has been taken in *another* cause or suit, yet by no means deny the admissibility of a deposition of a party when taken in the *same suit*. *Such a distinction never occurred to the minds of this court in those cases;* for Judge Scott, in *Kritzer v. Smith*, when speaking of Smith's deposition says: "*His name being subscribed to the deposition, on no ground could it be refused as an admission.* It was evidence, just as a letter or a voluntary affidavit would have been. There is nothing in the practice act of 1849 which can affect this question. That a party can be sworn as a witness in a cause, can be no reason why his admissions may not be read against him." And Richardson, J., in *Charleson v. Hunt*, follows that ruling and carries out the same line of thought; for he says when speaking of Hunt's deposition, taken in another cause: "The *paper was not offered* as a deposition but as *written admissions* by the interpleader; and the statute which gives the right to examine the adverse party as a witness *was not designed to exclude the ordinary means of proof, and it is competent to prove as admissions the oral or written statements of a party to a suit, though he might be called as a witness.*" Now, by what hidden process of reasoning it is that the majority of my associates arrive at the conclusion that the admissions of a party to a suit, when taken in the form of a deposition *in that suit*, lie *dormant* and *powerless* in *that* suit, possessed of no probative force as the admissions of the party making them, but, nevertheless, spring into active life and straightway become competent *as admissions* when offered *in another cause*, I am free to confess is beyond my power to comprehend. My learned associates certainly would not deny that a letter written by Mrs. Way would be competent evi-

dence against her in *any suit* then pending, or to which she might thereafter become a party, even though she would not be competent to testify in such suit. On what principle would such letter be received except as the written admission of the party writing the same? How, or in what way can this principle be affected or such written admission lose its intrinsic probative force, because it assumes the form of a deposition, hedged about with all the formalities known to the law? I have always understood that the statement of a party when it fell from his lips or his pen, if ever it became an admission *at all* became so *eo instanti*, and so remained whenever and wherever offered or introduced, and that it did not lie dormant on one occasion or in one suit, and revive and assert itself on other occasions and in other suits; but this impression of mine appears, from the majority opinion, to have been erroneous.

It seems to be thought that to allow the deposition of a party to be read as an admission in the same cause wherein it was taken, would be to construct a sort of statutory "*trap.*" It is quite evident from the quotations I have made from the cases in 21 and 27 Mo., *supra*, that Judges Scott and Richardson entertained no such views. With this matter, however, the courts have no concern. Such things belong to another branch of the government. That depositions are taken by an abuse of the privileges allowed by statute, does not render them incompetent by way of proving the admissions of a witness. *Zimmer v. McLaran*, 9 Mo. App. 591. And the rule is well established that evidence is none the less admissible because of having been improperly obtained from a party to the suit. *Stockfleth v. De Tastet*, 4 Campb. 10; *Collett v. Keith*, 4 Esp. 212; *Smith v. Beadnell*, 1 Campb. 30; *Robson v. Alexander*, 1 M. & P. 448; *Legatt v. Tollervey*, 14 East, 302; 2 Whart. on Evid., secs. 1099, 1120. And it was within the power of the plaintiff to waive the disability of Mrs.

Waldhier v. The Hannibal & St. Joseph Railway Co.

Way. 1 Whart. on Evid., sec. 475 *a ; Lewis v. Brooks,* 6 Yerg. 167. This he did, and after he had thus waived her disability and taken her deposition, he was not at liberty to use that deposition on the trial without according to her the right to testify in the cause. *Ib.,* sec. 489. And if she was surprised into making admissions, when making the statements in her deposition, it was competent for her, when that deposition was read in evidence by plaintiff, to explain such improvident admissions and to show that they were untrue. *Ib.,* sec. 488; 2 *Ib.,* sec. 1077; *Ray v. Bell,* 24 Ill. 444.

I have made this opinion of greater length than I had intended, but I regarded the ruling of the majority as so fundamentally erroneous that I could not be content without endeavoring to combat, as best I might, the grievous error which I believe that ruling sanctions.