Bent v. Lewis.

*Appeal from Clay Circuit Court.*—HON. G. W. DUNN, Judge.

REVERSED.

BENT, *Receiver*, v. LEWIS, *Administrator, Appellant.*

1.  Fraud : EVIDENCE.  A plaintiff will not be permitted to recover in an action based on the alleged fraud and corrupt agreement of defendant's intestate on evidence circumstantial in kind and of a vague and indefinite character, when by his own admission he has it in his power to produce positive and direct proof of the facts he alleges.

2.  ———— : ————.  The action of the trial court in this case in permitting plaintiff to withhold such direct and positive evidence, and the name of the person by whom it could be established, held to be erroneous and ground for reversal.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Noble & Orrick* for appellant.

(1) The application of defendant for a change of venue was made under a condition of the cause, and contained such statements of facts as entitled the applicant to an order in accordance with his prayer, as a matter of right. *Corpenny v. City of Sedalia,* 57 Mo. 88–92; *Barnes v. McMullins,* 78 Mo. 265–266; *Mix v. Kepner,* 81 Mo. 93–96; *Ex parte B. M. Chambers,* 10 Mo. App. 240. The statute provides that changes of venue shall be awarded to and from the courts of said city (St. Louis) as if were a county. R. S., secs. 3742, 3733. The application was in strict accordance with the statute; was made upon due notice; there was no contest over it. It was refused without right, and this was error. *Darby v. Stark,* 60 Mo. 51, and cases above cited. (2) The several motions to compel plaintiff to state a fair and distinct cause of action instead of the indefinite and uncertain statement contained in the petition were illegally refused. (3) Any action sustainable on any theory was in favor of Alexander, receiver of the Mound City Life Insurance Company (afterwards called the Columbia), and not of Bent, receiver. This vice inheres in the amended petition as the outgrowth of the original petition. (4) That this action has been prosecuted on a champertous contract between the receiver, Bent, and the attorney, Glover, and on a speculation by both attorneys, Glover and Gantt; and should be dismissed. *Duke v. Harper,* 66 Mo. 51–60; *Million v. Ohnsorg,* 10 Mo. App. 434; *Swanston v. Mining Co.,* Fed. Rep. (1882) 215; *Barker v. Barker,* 14 Wis. 142; *Webb v. Armstrong,* 5 Humph. 379; *Morrison v. Deaderick,* 10 Humph. 342; *Greenman v. Cohie,* 61

Ind. 201 ; *Herman v. Brewster*, 7 Bush, 355 ; *Allard v. Lamirande*, 29 Wis. 502 ; *Barnes v. Strong*, 1 Jones (N. Car.) Eq. 100 ; *Hunt v. Lyle et al.*, 8 Yerg. 142 ; 4 Black. Com. 135 ; *King v. Worden*, 12 Modern, 340. The contract is just as illegal made pending the suit as at any other time. *Barnes v. Strong, supra.* Rescission after action commenced does not prevent the legal bar. *Herman v. Brewster*, 7 Bush (Ky.) 355. (5) The statute of limitations pleaded in the answer and confessed in the reply is a complete bar to this action, and should have been so held. The action is not for relief " on the ground of fraud" within the meaning of the statute. *Carr.v. Thompson*, 87 N. Y. 160 ; *Thompson v. French*, 40 Iowa, 603 ; *Ashhurst's Appeal*, 60 Pa. 290 ; *Keeton's Heirs v. Keeton's Adm'r*, 20 Mo. 230 ; *Wells v. Perry*, 62 Mo. 573; Where money is received in a fiduciary capacity the statute begins to run immediately. *Johnson v. Smith's Adm'r*, 27 Mo. 591; *Ricord's Adm'r v. Watkins*, 56 Mo. 555 ; *Berry v. Pierson*, 1 Gill. (Md.) 234–248 ; *Robinson v. Hook*, 4 Mason, 152. See also : *McLane's Adm'r v. Shepherd's Exec.*, 21 New Jersey Eq. 76–80 ; *Robinson v. Hook*, 4 Mason, 152 ; *Zacharias v. Zacharias*, 33 Pa. St. 455–456 ; *Beaubien v. Beaubien*, 23 Howard, 208. The statute makes the lapse of five years an absolute bar to all actions for implied liabilities or obligations. G. S., 747, sec. 10, R. S., 1879. The reply to the plea of the statute, while it confesses the plea, does not avoid it. Discovery being in avoidance must be affirmatively averred and proven in particulars of time, manner and substance. *Wood v. Carpenter*, 101 U. S. 140 ; *Godden v. Kimmel*, 99 U. S. 211–212 ; *Stearns v. Page*, 7 Howard, 828 ; *Moore v. Green*, 19 Howard, 72 ; *Beaubien v. Beaubien*, 23 Howard, 208 ; *Badger v. Badger*, 2 Wall. 95 ; *Marsh v. Whitmore*, 21 Wall. 185. " Whenever the plaintiff relies on some special matter in his replication to the plea of the statute, he must plead it. * * *

The defendant must have information as to the facts proposed to be set up as a suspension of the statute, and the court erred in admitting the evidence." *Moore v. M. & S. Co.*, 80 Mo. 91. The reply in this case does not assert when the discovery occurred, what the facts were, or any of the circumstances. (6) There is no averment that discovery was made at any particular time or date. There is no proof of any discovery by plaintiff before or at time of commencing the action. He expressly states he made no discovery until two months at least after action was brought by Mr. Glover. (7) There was no concealment by defendant, William J. Lewis, and section 3244, Revised Statutes, 1879, does not apply. The section relates wholly to acts performed after the liability accrues. *Arnold v. State*, 2 Mo. 14; *Smith v. Newby*, 15 Mo. 159; *Wells v. Halpin*, 59 Mo. 92. *Bent v. Priest*, 10 Mo. App. 562, does not apply. There is no testimony, such as there referred to in this cause. Here was a contest as to the validity of the reply on entirely different grounds, and a hearing at which no evidence of the least weight was embodied in support of the reply. (8) The court below should have suppressed the depositions of Wilbur F. Boyle. The certificates showed he was not sworn in the present cause, but was sworn in a case styled Silas Bent, plaintiff, v. William J. Lewis, defendant. (9) The testimony of Lomax, set forth in defendant's statement, and objected to, should have been excluded as mere hearsay. 1 Green. on Evid. secs. 110, 111, 113. (10) The testimony of Charles H. Peck as to statement of an unknown and unnamed person, as to agreement of William J. Lewis, should have been excluded when offered. 1 Green. on Evid. secs. 113, 125; *Langsdorf v. Field*, 36 Mo. 445 a; *Howell, Excr., v. Howell*, 37 Mo. 124. Having been admitted on professional statement of plaintiff's attorney as to expectation of making competent,

it should have been subsequently ruled out. *Daniels v. Porter*, 1 M. & M. 501. The declaration of an unnamed person cannot be used to implicate a party and then be allowed as competent testimony because the party is thus implicated. *Wiggins v. Leonard*, 9 Iowa, 197. The person known to plaintiff should have been called. 36 Mo. 445 ; 37 Mo. 124. (11) The release pleaded by defendant, as given to Charles H. Peck by the receivers of the St. Louis Mutual Life Insurance Company, was a complete bar to this action, and as it was proven and admitted in evidence, the court should have decreed for the defendant. A contract will be interpreted in the sense in which the maker knew or had reason to suppose it was understood by the promisee. *Hoffman v. Ins. Co.*, 32 N. Y. 413 ; *Barlow v. Scott*, 24 N. Y. 40. (12) The suit is for the same assets settled for by the agreement of May 2, 1878, and to which plaintiff had no legal claim whatever, but the title to which vested in Alexander, receiver of the Columbia. (13) There is a total failure of proof to support the averments of the petition in form or substance. The judgment is expressly for a debt. The rule that the plaintiff must recover, if at all, *secundum allegata et probata*, applies in equity, as at law. 2 Daniel's Chancery Practice, 1034, 996–7 ; *Ensworth v. Barton*, 60 Mo. 511, 514 ; *Clements v. Yeates*, 69 Mo. 625, and authorities there cited ; *Baily v. Ryder*, 10 N. Y. 363. It is the same under the code as before. *Holden v. Vaughn*, 64 Mo. 590 ; *Conway v. Reed*, 66 Mo. 351, 352.

*Thomas T. Gantt* and *John M. Glover* for respondent.

(1) In actions charging one with fraud, evidence of character is admissible only where he is charged with fraud from mere circumstances. Greenl. on Evid. sec. 54 and note. In this case three concurring and unimpeachable witnesses depose to facts wholly inconsistent with the hypothesis of the innocence of Mr. Lewis. (2) Where a

contract is champertous it is void, and no court will en-
force it, but until there be a question of such enforce-
ment, no court will interfere. Besides there is no evi-
dence in the record to support the charge of champerty.
(3) "If a trustee accepts any benefits in conducting the
business of his *cestui que trust*, he will hold them in trust
for him," and "the directors of a corporation are trustees
and agents of the corporation." Perry on Trusts, secs.
206-7; Lewin on Trusts, 318 ; *Gaskell v. Chambers*, 26
Beav. 360. (4) There was no variance between the case
made by the pleadings and that shown by the proofs.
Allegations of unessential matter—matter without which
the charge of the bill is complete — need not be proved.
*Williamson v. Allison*, 2 East, 452. (5) A trustee on
money in his hands, not reported according to law, and
used by him, should be charged with ten per cent. in-
terest computed with annual rests. *Williams v. Petti-
crew*, 62 Mo. 460. (6) The statute of limitations in
actions for relief on the ground of fraud, does not begin
to run until the discovery of the fraud. R. S., secs. 3228
and 3230 ; *Hunter v. Hunter*, 50 Mo. 445 ; *Thomas v.
Mathews*, 51 Mo. 107.

HENRY, C. J.—On all questions presented for consid-
eration by this record, the court concurs in the opinion
delivered by the court of appeals, from whose judgment
this appeal is taken, except one, which we will hereafter
consider. I may also remark that as to the main ques-
tion, viz., the right of the receiver to recover from the
estate of W. J. Lewis, money alleged to have been re-
ceived by him as a bribe given for the betrayal of his
trust, as one of the directors of the St. Louis Mutual,
this court adheres to its decision in the case of *Bent, Re-
ceiver, v. Priest*, 86 Mo. 475.

The allegation in the petition is, that William J.
Lewis received thirty thousand dollars of the assets, and

proceeds of assets, belonging to the St. Louis Mutual Life Insurance Company, in consideration of his having corruptly, as one of the directors of said company, promoted the making of a contract between that company and the Mound City Life Insurance Company, by which the latter agreed to reinsure all the risks of the former, in consideration of a transfer by the former to the latter of all the assets of the St. Louis Mutual Life Insurance Company. This was a material and vital allegation. No cause of action is alleged, if it is eliminated from the petition. It devolved upon plaintiff to prove it. On this issue the testimony of Charles H. Peck, who was selected by the Mound City as a proper agent to corrupt the directors of the St. Louis Mutual, was, in substance, as follows: That there was an understanding between *him and a person claiming to represent Mr. Lewis*, that Lewis was to have a part of a fund of one hundred and fifty thousand dollars received by Peck from the Mound City Life Insurance Company. To this defendant's counsel objected, saying, "I wish to know what was said and done and *who did it*, and *when* and *where*, and I move to exclude the answer of the witness." The court overruled the motion. Mr. Peck was asked by plaintiff's counsel: "What was said, if anything, as to why he [Lewis] was to have the money, or what for, as a part of the agreement." His answer was: "I don't know that I can recollect the precise words." He was then asked to state the substance. His answer was: "Mr. Lewis' name was mentioned as one of the parties to receive a portion of this fund, in the event of a reinsurance of the company. This was before the reinsurance was effected." Throughout the examination of this witness, defendant endeavored to get him to disclose the name of the person who assumed to act for Mr. Lewis, but it was studiously withheld. The court was asked to state whether it would admit the testimony of Peck as to

the unknown party, and, in relation to that request, Mr. Glover, of counsel for plaintiff, said, "If the court please, that motion arises out of a desire to save the connection of a certain party, not a party in suit, but a party in interest in this matter. If there is any peril involved in failing to make proof which we were to offer, we will assume it." Mr. Peck testified that he handed Lewis a check on the bank of which Lewis was president, for twenty thousand dollars, and that not a word passed between them on that occasion. He does not state that he ever had a conversation with Lewis with regard to any money he was to receive of that corruption fund. Does not state what Lewis did, or agreed to do as a consideration for the twenty thousand dollars received by him. The name of the third person, who, he says, assumed to act for Lewis, was not disclosed.

There is not a particle of direct testimony connecting Lewis with that party. The fact, testified to by Peck, that he, Peck, delivered to Lewis a check for twenty thousand dollars, is a specimen of the connecting testimony. What that unknown party, that man in a mask, may have said to Lewis, what the consideration was which Mr. Lewis agreed with the unknown and unnamed to give for the twenty thousand dollars, is not disclosed. It is a mere matter of conjecture. He may have agreed to pay Mr. Lewis the twenty thousand dollars upon a very different account than that alleged in the petition. It may have been a legitimate contract. He may have disobeyed Peck's instructions. The defendant had a right to know who that person was, and where he lived. And the court erred in permitting plaintiff to prove what a person did and said as the agent of Mr. Lewis, without disclosing his name, or residence, or proving his agency, except by circumstantial evidence of the most unsatisfactory character, when it is fairly inferable, from what occurred at the trial, that he was within the reach of the

process of the court, and could have been called as a witness by plaintiff or by defendant, if plaintiff had seen proper to give his name.    It was virtually the admission of testimony of what that unnamed person who assumed to act for Mr. Lewis said and did, and was hearsay evidence.    When this cause was tried, Mr. Lewis was dead, having left a large estate and a reputation for integrity of infinitely more value to his family than all his property.    His administrator was contesting the case under most unfavorable circumstances, knowing nothing of the transaction which gave rise to the litigation, and if this unknown party had been introduced as a witness by plaintiff, or his name and residence had been disclosed so that he might have been called by the defendant, the administrator would have had an opportunity to go to the bottom of the transaction and get the precise facts before the court.    The refusal of plaintiff to call him as a witness, and to give his name and residence, is akin to the suppression of testimony, and gives rise to conjectures, not at all favorable to Peck's testimony or plaintiff's cause.    "The circumstance that a particular person who is equally within the control of both parties, is not called as a witness    *    *    *    lays no ground for any presumption against either."    *Scovill v. Baldwin*, 27 Conn. 318.

But here is a person who is the only one living who can testify to what passed between him and Lewis. The plaintiff, who seeks to recover upon facts peculiarly within the knowledge of this person, and who knew his name and residence, of both of which the defendant administrator is ignorant, would neither offer him as a witness nor disclose to the defendant his name or residence, or permit a witness testifying in his behalf to do so.    If the plaintiff wished to screen this party from exposure, he should not have introduced testimony connecting him with the transaction ; but, having introduced such testimony, it affords a presumption that, if he had been in-

troduced as a witness by the plaintiff, or if his name had been disclosed to defendant, and he had offered him, his testimony would have been favorable to the defence. In the case of *Eck v. Hatcher*, 58 Mo. 235, this court laid great stress upon the fact that Hatcher, ' charged with fraud in the purchase of a tract of land, did not go upon the witness stand and testify in the case. So in *Mabary v. McClurg*, 74 Mo. 575. The facts in those cases, and the facts in the case at bar, it is true, are not analogous, but the principle involved is the same. The plaintiff here could not testify to what transpired between Lewis and the unknown party, but he knew that party, and also his relations to Mr. Lewis in this matter, and that he was within the reach of the process of the court. If Lewis had been alive, it would be different; but here was his administrator, struggling under disadvantages, not only to save the estate, but the reputation of the intestate ; and the very man who could have told precisely what occurred between him and the intestate, was not only not offered as a witness, but his name and residence were studiously and persistently withheld from defendant.

That there was other testimony upon which the court might have found against the defendant may be conceded, but that it would have so found, excluding the incompetent testimony which was admitted, is by no means certain. Mr. Lomax was permitted, over defendant's objection, to testify to declarations made by Peck, after the reinsurance was effected, that Lewis was to receive a part of the funds transferred to Peck by the Mound City Life—declarations not made in the hearing of Lewis—or communicated to him, and not competent against Lewis. The strongest testimony in the case against Lewis is that of Judge Boyle, who testified : That he had a conversation with Lewis in which Lewis stated to witness that he had a transaction with Peck, in connection with the reinsurance, and that he had received

twenty thousand dollars from Peck, and had contributed $6,666.60 toward the payment of an amount Peck agreed to pay on a compromise of a suit against him to recover the assets he had received from the Mound City. That Lewis was informed that Peck was to receive one hundred thousand dollars from the Mound City for services in obtaining the consent of the *stockholders* of the St. Louis Mutual to the contract of reinsurance, and for his aid in getting an additional subscription of five hundred thousand dollars to the capital stock of the Mound City, which was required before the contract of reinsurance could be carried out, and, in the event that Peck received that amount, he intended to give Mr. Lewis twenty-five thousand dollars of it. Lewis made no reply, except that if the Mound City's stock was increased to a million dollars, the reinsurance would be a complete security to the policy holders of the St. Louis Mutual, and if the stockholders saw fit to pay Peck for his services, he saw no objection to it. There is not a word in all this testimony of the corrupt agreement alleged. Judge Boyle says that Peck was to receive the one hundred thousand dollars for procuring the assent of the *stockholders*, not the *directors* of the St. Louis Mutual, and for additional services in increasing the capital stock of the Mound City; and if he received that amount, he intended to give Mr. Lewis twenty-five thousand dollars of it. On what account? For his vote as a director? or any other service, as a director, he might render, in promoting the contract? Judge Boyle does not so testify—nor does any other witness, and it is exceedingly strange if Mr. Lewis had made such a corrupt agreement with Peck, that he should have unblushingly mentioned his connection with Peck, and receipt of the money from him to Judge Boyle or any one else. There is a great deal of mystery in the case that might be cleared up, if the person who assumed to act for Lewis were called to testify.

Excluding the incompetent testimony admitted, and that of Mr. Peck in relation to this unknown, unnamed, masked man, who is a prominent figure in the case, but whose features, name, residence and occupation are concealed, and the corrupt contract alleged was not proved. That there is sufficient testimony to excite a suspicion that there was something wrong in the receipt of the money by Mr. Lewis, is not sufficient. The allegation that he received it, in breach of the confidence reposed in him by the company, must be established by the testimony. "Facts which give rise to suspicion only, do not establish actual fraud which must be proved, and not conjectured." *Priest v. Way et al.*, 87 Mo. 16. We do not mean to say that it may not be proved by circumstantial evidence, but whatever the character of the testimony may be, it should fully sustain the charge. He did not receive anything which then belonged to the St. Louis Mutual. It is alleged that he did, but the evidence is to the contrary, and it is conceded by plaintiff's counsel that "the evidence wholly failed to show that the securities, before coming into the hands of Peck, belonged to the St. Louis Mutual Life Insurance Company. They had, indeed, once belonged to that company, but were transferred and assigned, with all the rest of the assets, by the contract, dated December 13, 1873, to the Mound City Life." The variance in this respect between the allegation and the proof may be immaterial; but the other specific acts and agreements alleged against Lewis, had no direct evidence to support them, and excluding incompetent testimony received, it is not clear that plaintiff was entitled to recover.

The legitimate testimony in the cause, it may be conceded, establishes the following facts, nothing more: That Lewis received of Peck twenty thousand dollars; that it had been said in his presence that Peck was to receive from the Mound City one hundred thousand dol-

lars in consideration of his services in procuring the consent of the stockholders in the St. Louis Mutual, to the agreement between that company and the Mound City, and increasing the capital of the latter to one million dollars, and that if he received that amount, one hundred thousand dollars, he intended to give Mr. Lewis twenty-five thousand of it; that Lewis said if the capital stock of the Mound City was increased to a million dollars, the reinsurance would be complete security to the policy holders in the St. Louis Mutual, and if the *stockholders* saw fit to pay Mr. Peck for his services he saw no objection to it; that afterwards Peck handed him a check on the bank of which Lewis was president for twenty thousand dollars; that Lewis afterwards told Boyle that he had a transaction with Peck in connection with the reinsurance and had received of Peck twenty thousand dollars, and paid $6,666.66 2-3 toward the payment of an amount which Peck had agreed to pay on a compromise of a suit instituted by the receivers of the St. Louis Mutual against him to recover the securities delivered to him by the Mound City Life. That the above facts furnish ground for a suspicion that there was something wrong in the transaction is not to be denied, but do they prove the cause of action alleged, viz: That in consideration that Lewis would promote the making of the contract between the St. Louis Mutual and the Mound City, Peck agreed to, and did pay him twenty thousand dollars? Is not the conclusion from the above facts, that such was the agreement, mere conjecture? and shall a plaintiff recover on testimony of the most vague and indefinite character, when, by his own admission, he has it in his power to produce testimony, positive and direct, that the corrupt agreement he charges was made, if made? When a party seeks to recover against another upon a charge of fraud, he has no right to leave the court to grope through a chain of

circumstantial evidence, when he admits that he has direct positive testimony to the facts. .It is fair treatment, neither to the court nor his adversary, and no court should in tenderness to a person connected with such alleged fraud, as the medium of communication between its perpetrators, permit him to be paraded in mask before the jury, his statements and acts disclosed by others and his name, residence and occupation with-. held from both the adverse party and the court.

The judgment is reversed and the cause remanded.